# DETROIT UNITED RAILWAY *v.* CITY OF DETROIT.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 1047.  Submitted May 5, 1913.—Decided May 26, 1913.

Franchises granting rights of the public must be in plain language, certain and definite in terms and containing no ambiguities. They are to be strictly construed against the grantee. *Cleveland Electric Ry. Co.* v..*Cleveland*, 204 U. S. 116.

An ordinance requiring a street railway company to comply with certain conditions on all of its lines until the expiration of the franchises of longest duration, *held* not to constitute a contract, extending all the franchises to the date of such expiration, within the protection of the contract clause of the Federal Constitution.

Where a street railroad company is operating in the streets of a city for a definite period and has enjoyed the full term granted, the

municipality may, upon failure of renewal of the grant, require the company within a reasonable time to remove its tracks and other property from the streets, without impairing any contractual obligation protected by the Federal Constitution or depriving the company of its property without due process of law.

156 Michigan, 106, affirmed.

THE facts, which involve the validity of a decree of the state court holding that certain franchises of the railway company had expired and that it should pay the city temporary rental for the use of certain streets or vacate those streets, are stated in the opinion.

*Mr. Richard I. Lawson* and *Mr. Alfred Lucking* for appellee, in support of motion to dismiss, affirm or advance.

*Mr. John C. Donnelly, Mr. William L. Carpenter* and *Mr. Fred A. Baker* for plaintiff in error, in opposition thereto.

MR. JUSTICE DAY delivered the opinion of the court.

This is a suit in equity, originating in the Circuit Court for the County of Wayne, of the State of Michigan, brought by the City of Detroit against the Detroit United Railway, to determine that certain franchises of the railway have expired and to require it to pay a temporary rental or to vacate the streets operated under the franchises. The decree of the Circuit Court in favor of the city was affirmed by the Supreme Court of Michigan. The case comes here on writ of error, and is now before us on motion of the city to dismiss, affirm or advance.

The Detroit United Railway owns and operates all the street railways in Detroit. Its principal east and west line is called the Fort Street Line, in connection with which three franchises have been granted to the Railway and

its predecessors. One of the franchises was granted by the Township of Springwells, part of which has since been annexed to the City of Detroit by legislative act, and the other two were granted by the city. By their terms the franchises expired June 17, June 30, and July 24, 1910, respectively.

The Township of Springwells had also granted certain other franchises (the part of the railway system covered by such franchises not being involved in this suit, however) to the Railway in 1889 and 1891 to expire in 1921, naming a certain rate of fare and providing that the tracks constructed under such grants should be deemed, for the purpose of collecting fares, an extension of the tracks theretofore laid in the Township and City. Upon the inclusion of that part of the Township of Springwells within the city which contained the lines of railway covered by the franchises of 1889 and 1891, the city, which had theretofore made certain contracts with the Railway for the reduction of fare upon the lines then within the city limits at certain hours under a system of tickets called workingmen's tickets, by an ordinance passed May 2, 1906, entitled "An ordinance in relation to rates of fare on Fort Street lines of the Detroit United Railway," amended the Township franchises so that the agreement between the Railway and the City with reference to workingmen's tickets should apply to the lines embraced in the grants of 1889 and 1891 for the term of such grants, but provided that the other provisions of the Township grants should remain unchanged.

Shortly before the expiration of the three franchises involved in this suit the City passed three resolutions under date of June 14, June 21, and July 19, 1910, the third being like but superseding the other two. The resolution of July 19, 1910, after reciting the fact that two of the ordinances had expired and the other soon would expire; that, because of the pendency of a certain suit and

injunctions issued therein, an ordinance prescribing the terms and conditions under which the Railway might continue to operate its lines after the expiration of its franchises could not be enforced; that under the constitution of Michigan it was impossible for the City to grant a term franchise without the affirmance of the electors of the City, and that the Railway was denied the right to operate its lines without a franchise, provided that the Railway might temporarily operate under the same terms and conditions as theretofore existed upon the payment of $200 a day to the City, and that, except upon such terms, consent to operate its railway was denied and refused to the Railway. The Railway by written communication denied that the franchises had expired, insisted that the demands of the City were illegal and declined to pay the sum named in the resolution.

The Railway, among other defenses, asserted that the ordinance of 1906 had the effect of extending its franchises to 1921, that, the original franchises being silent on the question of the rights of the parties upon the termination of the grants, an implied contract was created that the railway and other property of the Railway should continue in place and in use for the public convenience on reasonable terms and in conformity to the rights of the City, public and Railway, and that the resolutions impaired the obligations of the contracts of the Railway, in violation of § 10, Article I, of the Constitution and deprived it of its property without due process of law, in contravention of the Fourteenth Amendment.

The Circuit Court held, among other things, that the franchises had expired and ordered the Railway to accept the terms of the resolution and comply with its provisions or to vacate the streets. The Supreme Court of Michigan affirmed the decision of the Circuit Court that the franchises had expired and that all rights of the Railway to occupy the streets and to maintain and operate its railway

had terminated, and held that the Common Council of the City might require the Railway to cease the operation of its cars and might also require the Railway to remove its tracks from the streets, and provided the minimum time in which the Railway should be compelled to comply with the demands of the Common Council.

Certain Federal questions are made which require consideration, upon this application to dismiss or affirm, the first of which is that the attempt to terminate the rights of the Railway and require the removal of its tracks and property from the streets of the City impairs the obligation of a valid and subsisting contract for the continued use of the streets until 1921. This contention is based upon the ordinance of May 2, 1906, which, by its title, purports to be one in relation to rates of fare on the Fort Street lines of the Railway and which provides, after reciting the purpose of the ordinance, as we have mentioned above, and the intention that the grants from the Township of Springwells may be modified in accordance with the ordinance, the terms and conditions of the township grants not to be otherwise affected by the agreement:

"That the Detroit United Railway shall for the full term of said township grants, issue and sell tickets at the rate of eight tickets for twenty-five cents, each of said tickets to be good for a continuous ride between any two points on what are known as the routes of the Fort Wayne & Elmwood Railway lines, so called, whether constructed under grants from the Township of Springwells or from the City of Detroit, between the hours of 5 a. m. to 6.30 a. m.; and the hours of 4:45 and 5:45 p. m., but the terms of said township grants in all other respects shall not be modified or changed, nor shall this ordinance and the acceptance thereof be construed to abridge, enlarge or extend any rights acquired by said railway company, or its assignors or predecessors in title under said several grants from the Township of Springwells."

The argument is that, as this ordinance obligates the Railway for the full term of the township grants, which do not expire until December 14, 1921, to sell tickets and transport passengers over its railway, including the portion covered by the now expired grants, the last named grants of the Railway were thereby extended to expire at the same time with the township grants, because only by such construction can the obligation of the Railway to furnish transportation for the full term of the township grants be complied with; that this was a contractual obligation proposed by the City and accepted by the Railway, and necessarily extended the grants of the Railway.

The principles upon which grants of this character are to be construed have been frequently declared in decisions of this court. They were stated by the late Mr. Justice Peckham, speaking for the court, in *Cleveland Electric Railway Co.* v. *Cleveland,* 204 U. S. 116, 129:

"The rules of construction which have been adopted by courts in cases of public grants of this nature by the authorities of cities are of long standing. It has been held that such grants should be in plain language, that they should be certain and definite in their nature, and should contain no ambiguity in their terms. The legislative mind must be distinctly impressed with the unequivocal form of expression contained in the grant, 'in order that the privileges may be intelligently granted or purposely withheld. It is matter of common knowledge that grants of this character are usually prepared by those interested in them, and submitted to the legislatures with a view to obtain from such bodies the most liberal grant of privileges which they are willing to give. This is one among many reasons why they are to be strictly construed.' *Blair* v. *Chicago,* 201 U. S. 400, 471."

Applying these principles, it is impossible to hold that the effect of this ordinance was to extend franchises which by their terms had definite and fixed duration. Such

effect is nowhere suggested in the preamble of the ordinance, and does not necessarily inhere in the thing sought to be accomplished. Legislation concerning prior grants was not brought to the attention of the council, so that privileges enlarging them could be intelligently acted upon and clearly given or explicitly withheld. A fair construction of the ordinance requires such service at the rates fixed only while the Railway had a lawful right to use the streets by grant from the City. Certainly it was not contemplated that the City could require such service after the grant which it had itself given to the Railway had expired by its own limitation. Any other construction of this ordinance is forced and unnatural, and the construction contended for would have the effect to deprive the City of the right to control the use of its streets and grant to the Railway without any consideration or compensation rights which this record shows are of great value.

Nor do we find more force in the claim of an implied contract to permit the Railway to remain in the streets under such reasonable arrangements for public service as the situation might require. The right to grant the use of the streets was in the City. It had exercised it, had fixed by agreement with the Railway the definite period at which such rights should end. At their expiration the rights thus definitely granted terminated by force of the terms of the instrument of grant. The Railway took the several grants with knowledge of their duration and has accepted and acted upon them with that fact clearly and distinctly evidenced by written contract. The rights of the parties were thus fixed and cannot be enlarged by implication. *Louisville Trust Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *Cedar Rapids Water Co.* v. *Cedar Rapids*, 118 Iowa, 234; *Scott County Road Company* v. *Hines*, 215 U. S. 336; *Turnpike Company* v. *Illinois*, 96 U. S. 63.

We are of the opinion that where a street railroad is

authorized to operate in the streets of a city for a definite and fixed time, and has enjoyed the full term granted, it may, upon failure to renew the grant, be required, within a reasonable time, to remove its tracks and other property from the streets. In this case the Supreme Court of Michigan held that, if the city by the resolution of its Common Council should require the removal of the Railway's property from the streets, the removal should be effected by the Railway within ninety days after notice of the resolution, unless it be given a longer time or the time given be extended by like resolution. In thus providing for the removal of the property of the Railway from the streets of the city we are unable to see that any contractual obligation was impaired or that the property of the Railway was taken without due process of law, and these are the contentions as to Federal questions argued in this connection.

A number of other assignments of error are made, some of which do not appear to have been taken in the Supreme Court of Michigan and are consequently not reviewable here, and in none of them do we find any contention of the substantial impairment of rights secured by the Federal Constitution to the plaintiff in error.

We think the Federal rights relied upon are of such nature as to require no further argument for their determination, and the motion of the defendant in error to affirm will be granted.

*Affirmed.*