## PAYMENT REQUIRED OF A TRACTION COMPANY FOR STRENGTHENING A VIADUCT IT NO LONGER USES.

Court of Appeals for Hamilton County.

THE CINCINNATI STREET RAILWAY COMPANY AND THE CINCINNATI TRACTION COMPANY V. THE CITY OF CINCINNATI.

Decided, January 10, 1916.

*Franchise—Condition to the Advantage of the Municipality Enforcible —Notwithstanding it Does Not Inure to the Benefit of the Grantee —Traction Company Required to Contribute Toward Strengthening a Viaduct it Does Not Use.*

The provision contained in the fifty year franchise granted by the city of Cincinnati to the Cincinnati Street Railway Company, that in the event the Liberty street viaduct should be reinforced by the city so as to make it safe for heavy vehicular traffic or electric cars the street railway company should be required to contribute $7,000 toward the expense thereof, was one of the conditions upon which the granting of the franchise was based, and the obligation thereby imposed upon the street railway company was neither abrogated nor in any manner modified by a subsequent ordinance providing for the removal of the car line from the viaduct to other streets and to which removal the street railway company consented.

*Joseph Wilby* and *George H. Warrington,* for plaintiffs in error.

*Walter M. Schoenle,* City Solicitor, and *Constant Southworth,* Assistant Solicitor, contra.

JONES (Oliver B.), J.

One of the many terms and conditions contained in the resolutions passed by the board of administration of the city of Cincinnati August 13, 1896, providing for the extension of routes and franchises of the Cincinnati Street Railway for a period of fifty years under the so-called Rogers law, was Section 18 of said resolutions, as follows:

"18. Whenever the city of Cincinnati and the county of Hamilton, or either, through its authorized officers, shall desire to reinforce the Liberty street viaduct, situated on Liberty street between Garrard and State avenues, so that it will be safe for the operation of heavy vehicular travel or electric cars over the entire structure, the said the Cincinnati Street Railway Company shall be required to pay $7,000 towards defraying the expenses thereof."

All the terms and conditions of said resolutions were accepted and agreed to by said company on the same day they were passed and a bond was then given for the faithful performance of all the provisions of said resolution.

In February, 1901, the Cincinnati Street Railway Company, with the consent of the city, leased to the Cincinnati Traction Company all of its properties, routes and franchises, subject to the terms and conditions of said resolutions of August, 1896.

Prior to September, 1909, the city, at an expense of much more than $7,000, to-wit, about $189,000, reinforced Liberty street viaduct so that it was safe for heavy vehicular travel. Demand was made by the city on the Cincinnati Traction Company for the payment of $7,000 toward this expense. This demand being refused, suit was brought in the action below against both of the plaintiffs in error, as defendants, for the recovery of said sum.

The county of Hamilton originally built this viaduct and it was afterwards taken over by the city some time prior to the passage of said resolutions, at which time horse cars were being operated over it as part of what was called the Seventh street route.

Similar answers were filed by each of the defendants, setting up two defenses:

The first defense was to the effect that said Seventh street route had been, under resolutions of the board of public service of the city agreed to by the traction company, changed so that it no longer extended from Liberty street over said viaduct to State avenue, but instead ran from the intersection of Dalton avenue and Liberty street to the base ball park at the intersection

of Findlay and McLean avenues. Since the construction of the necessary tracks the traction company has operated its Seventh street route over the new route, so changed, with its terminus at the base ball park, and no electric cars were ever operated over said viaduct. There are no street car tracks, nor is there any provision for them on said viaduct as reinforced by the city in 1909, but all tracks and rails were removed from the viaduct, as it existed in 1896, by the city or by the street railway company with the assent of the city, shortly after the date of the resolutions of August 13, 1896, and no tracks have been constructed thereon since.

The second defense in defendants' answer denied that the viaduct had been so reinforced by the city as to make it safe for the operation of electric cars over the entire structure, alleging that it was not safe for the operation of electric cars and heavy vehicular travel, and was unsafe for the practical operation of electric cars of the present type, and that to so operate would be dangerous to cars and passengers as well as to pedestrians using said viaduct.

A demurrer was sustained to the first defense of the answers, defendants each reserving an exception. Upon trial, plaintiff having offered evidence to sustain all of the allegations of the petition, defendants then offered evidence to prove the several allegations set out in the first defense of their respective answers, which had been stricken out by the sustaining of plaintiff's demurrer. This evidence was excluded by the court, to which defendants excepted and offered no further evidence, but requested an instructed verdict in their favor, on the following grounds:

"(1) That the plaintiff has offered no evidence tending to prove that the Liberty street viaduct has been reinforced so as to be safe for the operation of electric cars over its entire structure.

"(2) That the evidence shows that the city of Cincinnati and the defendants had agreed to abandon the use of the Liberty street viaduct for street railway traffic.

"(3) That no provision has been made or was ever made in the reinforcement of the Liberty street viaduct for the operation

of street railway cars; and that there has been a failure of the consideration stipulated to be paid by the defendants as set forth in paragraph 18 of the resolutions of August 13th, 1896.''

The court charged the jury—

''that if you find from the evidence that this resolution, known as paragraph 18 of the franchise described, was passed and accepted by the Cincinnati Street Railway Company, that it thereupon became a binding contract between the two parties; and if the city of Cincinnati reinforced the Liberty street viaduct so that it was safe for heavy vehicular travel, these companies, the defendants herein, would be liable for the amount claimed, which they agreed to pay.''

A verdict was returned for plaintiff, upon which judgment was entered.

Plaintiffs in error urge that a proper construction of clause 18 of the franchise resolution requires that as a condition of payment of the $7,000 the viaduct must not only be made safe for the operation of heavy vehicular travel, but also for electric cars. In other words, that the word ''or'' should be made to read ''and.''

This argument is based upon the idea that the reinforcement of the viaduct would be of no special benefit to the traction company unless its cars could run over it, and that it had no interest in the matter of its use for other heavy vehicular travel. Such an argument might well be used as an objection to the acceptance of the franchise clause in the form in which it was written. But it is one of the many conditions found in that franchise. Counsel for the traction company concede that it might have been drawn to provide for an absolute payment of $7,000 simply upon the acceptance of the grant, or at any particular time or on the happening of any particular event. It does so provide for the payment upon the reinforcement of this viaduct to be sufficient for either of two purposes. The traction company may have had no interest in any vehicular travel upon the viaduct other than the electric cars; the city, however, had an interest in such other vehicular traffic, and this condition was for the benefit of the city

and was therefore inserted in the alternative form in which we find it. If, as counsel contend, the present heavy type of electric car—which is considerably heavier than any other present form of "heavy vehicular travel"—was then in contemplation and must be provided for before the payment can be demanded, then the use of the words "heavy vehicular travel" would be superfluous.

The language as written does not make the continued use of the viaduct for street railway purposes a prerequisite to enforce payment. It is conceded that the route was abandoned and that the tracks were removed by the consent of defendants below. If by such change it had been intended to relieve the traction company from the payment required from it by clause 18, it might well have been so provided in the resolutions as one of the conditions of the change of route. The fact that this was not done must be construed to show that the parties to the agreement did not regard the continued use of the viaduct as in any way essential to the obligation to pay such a small part toward the repair of a structure that had been previously used by horse cars without, so far as is shown by the record, any contribution to its cost or maintenance by the street railway company. The proportionate share of cost, which may be charged against a traction company where a viaduct is constructed for the abolition of a railroad crossing at grade, is allowed by statute (G. C., 8892) to be so much greater a percentage that the small amount here provided could hardly be deemed to have been intended as the proper share of the necessary cost to be borne by the traction company for the continued use of the viaduct for electric cars during the life of the franchise.

The fact that the change of route, made with the consent of the traction company, has taken away its right to now occupy the viaduct makes it of no importance to it whether the reinforcement made has or has not so strengthened the viaduct as to support the operation thereon of electric cars.

In the construction of ambiguous language, both of laws and of contracts, courts have at times found it necessary to change the word "and" to "or" and vice versa. But no case will be

found which would authorize such change in the language under consideration. In fact, in the opinion of the court, the words used in clause 18 are clear and without ambiguity, and no occasion arises requiring interpretation of the language used, contrary to its plain meaning. *Slingluff* v. *Weaver,* 66 O. S., 621.

If there were any doubt in the matter as to the construction of this franchise condition, that most favorable to the city should be adopted. *East Ohio Gas Co.* v. *Akron,* 81 O. S., 33, 52; *Railroad Co.* v. *Defiance,* 52 O. S., 262, 307; *Cincinnati* v. *Cin. St. Ry. Co.,* 12 N.P.(N.S.), 305, 308 (affirmed by Supreme Court), 13 O. L. R., 83; *Detroit U. Rys. Co.* v. *Detroit,* 229 U. S., 39.

The duty of making this payment of $7,000 towards the expense of reinforcing this viaduct thus being one of the obligations imposed by the terms of the franchise, Sections 9102 and 3771 of the General Code forbid any release therefrom by the officers of the city.

Judgment affirmed.

JONES (E. H.), P. J., and GORMAN, J., concur.