Johnson, J.
The contention of the village is that the public utilities commission was without jurisdiction to entertain the complaint and make the order, the reversal of which is sought.
A statement of the steps taken, in their chronological order, will assist in the consideration of the question.
The period fixed for the franchise granted the company, under which the company had laid its pipes and furnished gas, having expired, the village on the 28th of December, 1915, passed an ordinance which granted the company the right to maintain and lay in the streets its pipes and conduct natural and artificial gas for the period of five years, and fixed the rate which consumers should be required to pay at 50 cents per thousand cubic feet.
Among other conditions in the ordinance it was provided that before it should take effect a true plat showing the location of all the pipe lines and pipes of the company in the village should be filed with the clerk of the village, and that on the company failing to comply with any of the conditions the ordinance should terminate and end as though it had not been passed. It was also a condition precedent to the taking effect of the ordinance that the company should pay the cost of its publication.
*279 It is admitted that the company never paid the cost of publication of the ordinance, that the ordinance was never published, and that the company never filed the plat referred to.
On the 25th day of February, 1916, the company notified its consumers in the village that it would thereafter charge 75 cents per thousand, and thereupon, after the notice was received, the village, on the same day, ordered the company to remove its pipes from the streets.
On March 7th, the company appeared before the council and refused to accept the franchise ordinance, and on the following day the village repealed the ordinance.
The appeal to the public utilities commission was filed by the company on the day following the date on which it increased the charge to 75 cents and on which it had been ordered to remove its pipes by the village.
So the situation was that the franchise granting the privilege to lay the pipes and conduct its business in the village had expired and no new franchise or contract had been made and agreed upon by the parties.
Thus the status of the parties under the circumstances was as stated in The City of Columbus v. The Columbus Gas Co., 76 Ohio St., 309, 331: “Former ordinances referred to in the answer had run their course and had expired, and the gas company wanted and needed the ordinance of 1892, and without it the company had no right as against the will of the council to longer continue its business in the streets and other public grounds.”
*280 In The East Ohio Gas Co. v. The City of Akron, 81 Ohio St., 33, 53, it is said: “If the refusal to comply is final, the company necessarily incurs the penalty of forfeiture of its franchise to serve the people of the city.”
In Detroit United Railway v. City of Detroit, 229 U. S., 39, it was held:
“Where a street railroad company is operating in the streets of a city for a definite period and has enjoyed the full term granted, the municipality may, upon failure of renewal of the grant, require the company within a reasonable time to remove its tracks and other property from the streets, without impairing any contractual obligation protected by the Federal Constitution or depriving the company of its property without due process of law.”
In the opinion, at page 45, it is said: “The Railway took the several grants with knowledge of their duration and has accepted and acted upon them with that fact clearly and distinctly evidenced by written contract. The rights of the parties were thus fixed and cannot be enlarged by implication.” (Citing cases.)
In order that there should have been a valid contract between the parties, which renewed the franchise, it was necessary not only that there should be an ordinance duly passed and published in accordance with law, but that the company should accept its terms. (East Ohio Gas Co. v. City of Akron, 81 Ohio St., 33.) Until such acceptance, it lacked the essentials of a contract. It was a mere proposition.
*281 We have no doubt that if the period fixed for the duration of an existing franchise has expired, and the municipality thereafter duly and legally passes a new rate ordinance, which goes into legal effect with reference to the product or service contemplated in the franchise, such action would amount to an implied extension of the old franchise, for the term fixed in the ordinance, for the rate. But in this case at the time the company filed its appeal with the public utilities commission its franchise had expired and no new franchise had been granted and accepted; no new rate ordinance had been passed. The company had not only not accepted the new franchise ordinance, but it had in contravention of the terms of the ordinance notified its customers that the price of gas would be 75 cents instead of the 50 cents fixed by the ordinance. And thereafter it appeared before the council and specifically refused to accept the ordinance.
By the provisions of Section 614-44, General Code, any municipal corporation in which any public utility is established, may, by ordinance, at any time within one year before the expiration of any contract entered into under the provisions of Sections 3644, 3982 and 3983, General Code, between the municipality and the public utility with respect to the rate to be charged by such utility, proceed to fix the rate that such utility may charge for an ensuing period, as provided in those sections.
It is provided in the same section that the utility may file its complaint in writing with the public utilities commission within sixty days after the *282 passage of the ordinance, and that the commission shall thereupon proceed with the matter as provided in that and the succeeding sections, and shall, if it is of the opinion that the “rate so fixed by ordinance” Is unjust or unreasonable, or insufficient to yield reasonable compensation for the service, fix and determine the just and reasonable rate. All of which is to be done in the manner prescribed by those sections.
It will be observed that there is no right of appeal or complaint, at all, until an ordinance is duly and legally passed and in effect, fixing the rate. When such an ordinance is in effect, an appeal may be had. It must also be noted that Section 614-46 provides that if the commission is of opinion that the rate “so fixed by ordinance is or will be unjust * * * the commission shall * * * fix and determine the just and reasonable rate,” etc. Of course this could only be done in case of an ordinance in due and legal effect.
The public utilities commission is an administrative board and only has such authority as the statute creating it has given it. It has no power to confer franchises or make contracts which shall be effective between a municipality and a public utility, or between other parties.
We have repeatedly declared this view of its status and powers. The City of Cincinnati v. The Public Utilities Commission, 91 Ohio St., 331; The City of Cincinnati v. The Public Utilities Commission of Ohio, 96 Ohio St., 270; The Interurban Ry. & Term. Co. v. The Public Utilities Commission, 98 Ohio St., 287, and The Sylvania Home Tel. Co. *283 v. The Public Utilities Commission of Ohio et al., 97 Ohio St., 202.
When an appeal has been filed the procedure is prescribed, and Section 614-46, General Code, provides that the commission shall determine the just and reasonable rate to be charged “during the period so fixed by ordinance, which shall not be less than two years,” and order the same substituted “for the rate” fixed by the ordinance.
Therefore, it would of course be necessary that there must first be an ordinance granting a franchise to the company to occupy the streets and sell its product, and that either that ordinance, or another, must fix the rate. In this case, there not having been any effective ordinance passed, there was nothing from which the public utility was authorized to appeal. As was said in Cincinnati v. Public Utilities Commission, 96 Ohio St., at page 274: “There were no existing rates to alter, amend or suspend.”
As above stated, Section 614-44 provides that the city within one year before the expiration of any contract entered into under the provisions of the sections named, with respect to the rate, price, etc., may proceed to fix the price which the public utility may charge for an ensuing period, as provided in Sections 3644, 3982 and 3983, General Code.
The same section contains the provision that the filing of a complaint by the public utility as herein provided shall be taken and held to be the consent of such public utility to continue to furnish its product or service and devote its property engaged *284 therein to such public use during the terms so fixed by the ordinance or by the provisions of the act.
This provision contemplates and recognizes the right of the utility to discontinue the furnishing of its product or service or the devoting of its property to the public use, if it so desires, at the expiration of the prior franchise contract. And the franchise contract being mutual, the village has a like privilege of termination.
The provision that the filing of the complaint shall be taken to be the consent of the company to continue to furnish its product or service during the term fixed by the ordinance presupposes the existence of an ordinance which fixes the rate appealed from. Of course the village itself has not the power to determine or in any way affect the right of the utility to appeal to the commission. The legislature fixes that.
Where the franchise of a public utility to occupy the streets and public places in a municipality and sell its product and service has not expired, and there is no contract or valid ordinance in effect fixing rates and charges, the method of fixing rates is provided by Section 614-16 and succeeding sections of the General Code. And if the rates fixed in the schedules there required to be filed are claimed to be unjust, unreasonable, or otherwise violative of law, complaint may be filed with the commission, which is required to hear and determine the matter and fix a just rate.
It was decided in Cincinnati v. Public Utilities Commission, 96 Ohio St., 270, that "In the absence of an effective ordinance prescribing rates for *285 service by a public utility, such rates should be established in accordance with the provisions of Section 614-16 et seq., General Code.”
We think the commission had no jurisdiction to entertain the complaint filed in this case and its order is, therefore, reversed.

Order reversed.

Nichols, C. J., Matthias and Robinson, JJ., concur.
Wanamaker, J., concurs in the judgment.