Johnson, J.
There is no substantial disagreement between the parties as to the facts. It is conceded that a valid ordinance had been passed by /the city- granting to the railway company a franchise to construct and operate the railway in the streets and public places; that the company accepted the franchise and constructed and operated the railway thereunder; that by the terms of the franchise ordinance the company was to pay for the paving and improvements as stated in the petition, and that the “company and its successors and assigns have failed, neglected and refused to pay for such pavement;’’ that by decree of the court of common pleas all the rights granted to the original company, its successors and assigns, were forfeited for failure to. comply with the conditions of the franchise; and that the defendants have acquired the property described in their pleading by the sale referred to.
By paragraph 7 of the agreed statement of facts it is conceded “That the defendants threaten to re *8 move the rails from said streets and the public square, * * * it being intention of defendants to not restore the streets after taking up such rails.”
Therefore, the simple' question is presented, whether a street railway company, which has constructed a line of railway in the streets of a city, pursuant to the terms of a valid franchise, may on the expiration of the term of the franchise, or on its termination by forfeiture or otherwise, go upon the streets occupied by its track, make excavations therein, and tear up and remove the line of railway, without being under the obligation to restore the surface of the street to its original condition so as to render it fit for the purpose for which it was created.
The majority of the court of appeals, as shown by its opinion, entertained the view that the rights of the parties were entirely contractual, and that, in view of the fact that the ordinance was silent as to the removal of the rails and othenproperty of the company, the city was not entitled to the order with reference to the removal which it prayed for in its petition.
That when the franchise ordinance was accepted by the railway company such act constituted a contract between the parties, and that their rights are to be determined by the contract itself, is not open to question. That principle is firmly settled by many holdings of this court, and is declared in The East Ohio Gas Co. v. The City of Akron, 81 Ohio St., 33, which is here relied upon by the defendants in error.
*9 In that case the contract was silent as to the duration of the franchise, and the city was in court denying the right of the gas company to discontinue the furnishing of gas to the city and its inhabitants and to take away from the streets its mains and pipes. It was held that the franchise was not perpetual, but the duration was simply indeterminate, existing only so long as the parties mutually agreed thereto, and that.“The incorporated company may therefore voluntarily forfeit its right to exercise its privileges within the municipality and wholly withdraw therefrom; but in such case the municipality has no right to prevent the incorporated company from removing its property, nor to take possession of and make use of the same, nor to grant the right to use the same to another company, without due process, of law.”
We think there is general concurrence in the view that when a franchise has expired, or has been revoked, the grantee corporation, in the absence of provisions in the contract to the contrary, may be compelled to remove its structures, and, on the other hand, if it desires to remove them, cannot be prevented from doing so. 19 Ruling Case Law, 1161, Section 436; Laighton v. City of Carthage, 175 Fed. Rep., 145; Cleveland Electric Ry. Co. v. Cleveland et al., 204 U. S., 116, and Detroit United Railway v. City of Detroit, 229 U. S., 39.
But the question still remains whether the company, or its successor in title, as to so much of the property as is located in the public streets of a city, is required, after it has exercised its right of removal, to restore the street to the condition in *10 which the city had placed it, suitable for the purposes of a public thoroughfare.
It is insisted that as the franchise contains no specific provision requiring the company to restore the streets after removing its property, it cannot be required to do so. The streets and public places of a municipality are held in trust for the benefit of the public. They are required to be kept open and free from nuisance. Unless vacated or abandoned in compliance with the method provided by law, a city has no right to contract away public streets, or to render them unfit for passage or dangerous to the public. An individual may abandon his private property, but a public trustee cannot abandon public property.
In The L. & N. Rd. Co. v. The City of Cincinnati, 76 Ohio St., 481, it is held that public streets, squares, landings and grounds are held in trust for the public, and that it is not in the power of the legislature, unless in the exercise of the power of eminent domain, to authorize property dedicated to the public for a specific purpose to be used for a purpose inconsistent with the purpose for which it was dedicated.
In Railway Company v. Telegraph Association, 48 Ohio St., 390, it is declared that the dominant purpose for which streets in a municipality are dedicated and opened is to facilitate public travel and transportation, and, in that view, new and improved modes of conveyance by street railways are by law authorized to be constructed, and a. franchise granted to a telegraph company to construct and operate its lines upon and along such streets is sub *11 ordinate to the rights of the public in the streets for the purpose of travel and transportation.
In The L. S. & M. S. Ry. Co. v. The City of Elyria, 69 Ohio St., 415, the court decided that the city was not authorized to agree to the exclusive occupation of the street and that the company could be compelled to restore the'street to its former condition without compensation. So here, when the franchise contract has been violated and all rights under it forfeited and terminated, the grantee should be required to restore the public street to the condition in which it found it or in which it 'had been legally put.
The statutory provisions prohibiting the creation of nuisances in the public streets and thoroughfares are familiar.
In State, ex rel., v. The D. & S. E. Rd. Co., 36 Ohio St., 434, it was held that the statute which requires the railway company to place a highway crossed or diverted “in such condition as not to impair its former usefulness” is a condition inseparable from the right or franchise granted to such company to cross the highway with its railroad, or to divert it from its location, and these obligations were recognized and enforced in Little Miami Rd. Co. v. Commissioners of Greene County, 31 Ohio St., 338. The statutes and declarations of this court to which we have called attention sufficiently show the public policy of the state, touching its public highways and streets, as well as their legal status and the paramount rights of the public in them.
*12 The grantee of a franchise granted by a municipality accepts the grant with knowledge that the municipality has not the full powers, of an individual in making the contract, but has only such powers as are specifically conferred upon it, or necessarily implied from express provisions. No implication can properly be made that the grantee of a franchise to construct a street railway in the street, after the city has gone forward at great expense and paved the street, including the portion thereof occupied by the tracks of the railroad company, has the right to tear up the street, destroy the improvement made by the city at its own expense, and leave the street in an impassable condition which can only be corrected at great cost. On the contrary, in the absence of express provisions in the franchise contract, of a character which the city was authorized to include therein, the presumption is that the public rights shall be regarded and preserved by the company which accepts the grant. The only legal justification for a grant to a street railway to occupy the streets is because it contributes to and advances the public welfare and the purposes of traffic, passage and transportation.
Rights in streets or highways granted to public service corporations are at all times held in subordination to the superior rights of the public and all necessary and reasonable police ordinances, notwithstanding they may interfere with legal franchise rights. The grantee takes them subject to the paramount right of the municipality to grade and improve its streets and make such requirements and regulations as are necessary and reasonable in *13 order to make the streets suitable and convenient for use of the traveling public, and will be required to. make such changes in its appliances as are rendered necessary thereby at its own expense. 13 Ruling Case Law, 177, Section 154. See also Railway Company v. Telegraph Association, supra.
In The Interurban Railway & Terminal Co. v. The Public Utilities Commission, 98 Ohio St., 287, it is declared in the syllabus: “The state cannot be deprived of its right to the proper exercise of the police power; and none of its subdivisions can bind itself by contracts which are or which may become deleterious to the peace, order, health or morals of the people.”
In 13 Ruling Case Law, 179, Section 154, it is said: “The police power cannot be surrendered, so that the franchises of private corporations must be conclusively presumed to be acquired'with reference to its existence, and contract rights must yield to the proper burdens imposed by growth and development.”
Now, in this case, the defendants in error are conceded to be the owners of the property in question, but their rights with reference to the removal of it from the streets of the city are in no ways -superior to or different from the rights which the railway company, their predecessor in title, had. The statute requires that the streets shall be kept unobstructed and free from nuisance. The city by contract cannot absolve itself from this duty, nor can it convey to others the right to create nuisances in the streets, except in the making of necessary improvements or structures, and then only in the *14 manner and to the extent fixed by statute or by well-settled rules.
It is conceded that the defendants have a right to remove, their property from the streets. As between a landlord and tenant the rule is familiar that a tenant may remove fixtures erected by him from leased premises, when they have not become part of the realty, but the removal must be conducted in such manner as not to injure the premises or to leave them in worse condition.
The rule is stated in 11 Ruling Case Law, 1071, Section 15: “Such fixtures may be removed when they may be taken without injury to the premises, but not when their removal would leave the premises in a worse condition than when the tenant took possession.”
The company was required by the franchise here in question to do the paving and to keep up the repairs referred to. It wholly failed to perform its contract, and forfeited its franchise. It would be a strange rule which would permit the grantee to violate its contract, to abandon and wholly fail to perform the service to the public for which the franchise was granted, and then to go upon the street and tear up and render it unfit for travel, without restoration; to' tear up expensive paving which it was obligated by its contract to pay for, and 'which it wholly failed to do. And the defendants here have only succeeded to the rights of the company in the property.
Defendants in error urge that injunction is not the proper remedy here and that plaintiff would have an adequate remedy at law for any claim it *15 might have. An adequate remedy is one that affords relief with reference to the matter in controversy, and which is appropriate to the particular circumstances of the case.
In this case the agreed statement of facts contains the express stipulation that the defendants threaten to remove the rails from the streets and the public square and “intend to not restore the streets after taking up the rails.” Therefore, it is conceded that defendants contemplate the doing of a thing which if not corrected by the city itself will constitute a continuing public nuisance. Courts of equity are not powerless in the presence of such a situation. A case is presented which cannot be adequately dealt with and the rights of the public properly secured by a proceeding at law. It is said in Elliott on Municipal Corporations (1 ed.), Section 102: “Neither the..acquiescence of a city in an obstruction or private use of a street by a citizen, nor laches in resorting to legal remedies, nor the statute of limitations, nor equitable estoppel, nor prescription, can defeat the right to maintain a suit in equity to remove the obstructions.”
With reference to the suggestion that the plaintiff in error is estopped by its action and by the decree in the case in which the property was sold to the defendants in error, the agreed statement of facts in the case before us shows that the court ordered that in the event the city was entitled to have the receiver or purchaser remove such property and place the streets in proper condition as prayed for by the city “the rights of the city to have the property removed and the street improve *16 ment re-laid, as well as the right of the city in and to the property lying on High street east of Catherine, be continued for further determination by the court.”
It will be observed that the city is not here asking that the defendants be required to remove the property, but on the contrary is asking that the defendants be prevented from removing the property except in the manner stated. The court did not attempt to decree the purchasers the right to remove the property. That question was not made in the case. - ..
This contention does not seem to* have been regarded as a serious one in either of the trial courts. No reference is made to it in the decree in either court, nor in any of the opinions to which our attention has been called.
The judgment will be reversed and cause remanded to the court of appeals with instructions-to enter a decree in accordance with this opinion.

Judgment reversed.

Nichols, C. J., Matthias, Wanamaker and Robinson, JJ., concur.