550 So.2d 702 (1989)
VALLEY ELECTRIC MEMBERSHIP CORPORATION, Plaintiff/Appellant,
v.
SOUTHWESTERN ELECTRIC POWER COMPANY, et al., Defendants/Appellees.
No. 21021-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Writ Denied November 17, 1989.
*703 Gahagan and Conlay by Henry C. Gahagan, Jr., Nachitoches, for VEMCO.
Wilkinson, Carmody & Gilliam by Arthur R. Carmody, Jr., Shreveport, for SWEPCO.
Burnett, Sutton & Walker by Steven R. Baker, Shreveport, for Town of Stonewall. *704 Schwab & Walter by William E. Hodgkins, Baton Rouge, for the Ass'n of La. Elec. Cooperatives.
Before HALL, C.J., and NORRIS and HIGHTOWER, JJ.
HALL, Chief Judge.
Valley Electric Membership Corporation (VEMCO) filed this action for declaratory judgment and injunctive relief against the Town of Stonewall and Southwestern Electric Power Company (SWEPCO). VEMCO sought declaratory judgment recognizing its right to continue to provide electric power to existing customers and locations in the corporate limits of the town which it served under a 15 year franchise from the town which expired October 16, 1987 and under a 99 year franchise granted in 1938 by DeSoto Parish prior to incorporation of the Village (now Town) of Stonewall in 1972. It sought a preliminary and permanent injunction enjoining the town from enforcing the town's order for VEMCO to remove its facilities and to coordinate a transfer of service to SWEPCO and from interfering with VEMCO's service to its customers. VEMCO sought injunctive relief enjoining SWEPCO from interfering with VEMCO's service to its customers and a mandatory injunction requiring SWEPCO to remove its lines and facilities providing service to any service location formerly served by VEMCO within the town limits.
In response, the Town of Stonewall filed an exception of improper cumulation of actions, non-joinder of a necessary party, failure to join an indispensable party, and an exception of no cause and no right of action. SWEPCO filed a motion to dismiss for failure to join an indispensable party, a motion to dismiss the claim for injunctive relief, and exceptions of no cause and no right of action.
After a hearing on the rule for preliminary injunction, the district court found that VEMCO was entitled to serve customers existing on the date of incorporation of the village, but that VEMCO's right to serve customers established later under the town franchise had terminated with the expiration of the franchise granted by the town. Judgment was rendered ordering the issuance of a preliminary injunction against the Town of Stonewall enjoining it from taking any action to remove or cause to be removed any of the facilities which VEMCO had installed, improved or maintained under its non-exclusive franchise from the DeSoto Parish Police Jury or interfere with its service locations which were being served prior to October 16, 1972, the date the franchise was granted by the municipality. The remainder of the demands of VEMCO were denied. Costs were assessed one-half to VEMCO and one-half to the town and SWEPCO.
A separate judgment was rendered dealing with the exceptions. SWEPCO's motion to dismiss for failure to join indispensable parties was denied. SWEPCO's motion to dismiss the claim for injunctive relief was granted to the extent set forth in the court's written reasons for judgment. SWEPCO's exceptions of no cause and no right of action were sustained. The exceptions of no cause and no right of action filed by the town were sustained in part and denied in part as explained in the written reasons for judgment. The exceptions of improper cumulation of actions, non-joinder of necessary party and non-joinder of indispensable parties were overruled.
VEMCO appealed. The town answered the appeal. SWEPCO neither appealed nor answered. For reasons expressed herein we amend to grant a preliminary injunction against SWEPCO enjoining it from making connections to provide electric service to locations presently served by VEMCO which were being served prior to October 16, 1972, and otherwise affirm.

ISSUES ON APPEAL
On appeal VEMCO asserts that the trial court erred in not finding that VEMCO had the right to continue to provide electrical service to those locations within the municipal limits of the town being served on October 15, 1987, the date of expiration of the town franchise, and that the trial court erred in limiting the preliminary injunction against the town to VEMCO's service locations *705 being served prior to October 1972. VEMCO also argues that the trial court erred in not enjoining SWEPCO from providing electrical service to locations being served by VEMCO on October 16, 1987 and in not enjoining the town from taking any action to remove or cause to be removed any of VEMCO's distribution facilities located in the town which served customer's outside of the town limits. VEMCO asks that the judgments sustaining the exceptions be reversed and that the judgment granting the preliminary injunction be amended to enjoin the town from taking any action to remove or cause to be removed or to interfere with any of the facilities installed or locations served by VEMCO on the date of expiration of the town franchise. VEMCO also asks that a preliminary injunction against SWEPCO be granted enjoining SWEPCO from providing electrical service to any customer served by VEMCO on the date of the expiration of the town franchise and ordering SWEPCO to remove any lines or other facilities now serving such locations.
By answer to the appeal, the town urges that those parts of the judgments rejecting VEMCO's demands be affirmed but that the part of the judgment granting a preliminary injunction against the town be reversed. The town complains of the assessment of any part of the costs against it.
SWEPCO urges affirmance of the parts of the judgment rejecting VEMCO's demands and aligns itself with the town in urging reversal of that part of the judgment granting the preliminary injunction.

BACKGROUND FACTS
On June 1, 1938, VEMCO was granted a non-exclusive franchise by the DeSoto Parish Police Jury for a period of 99 years to erect, construct, maintain and operate a line or lines or poles, wires and structures or transmission and distribution of electric energy over, on, along, under and across public roads and state highways within the parish for the purpose of transmitting, distributing and supplying electricity for lights, heat, power and other purposes, including the right to erect and construct all necessary and proper fixtures in and along said public roads and state highways, not within the limits of any incorporated city, town or village. LSA-R.S. 33:4361. Pursuant to its franchise VEMCO began providing electric service to customers within DeSoto Parish, including the area later incorporated into the Village of Stonewall.
On August 11, 1972, the community of Stonewall was incorporated as a village. On October 16, 1972, on application of VEMCO, the mayor and board of alderman of the Village of Stonewall by ordinance granted unto VEMCO a non-exclusive franchise to erect, construct, operate and maintain electric facilities and consisting of within limitation generating plants, sub-stations, transformers, switches, towers, poles, cablewires, conductors and lamps with all fixtures and appurtenance necessary or advisable for the proper operation and the maintenance of such facilities within the limits of the Village of Stonewall, for the purpose of supplying electric service for public and private use therein and for the transmission of electricity through and beyond the Village of Stonewall. LSA-R.S. 33:4401. This franchise was granted for a period of 15 years.
On June 7, 1950 the DeSoto Parish Police Jury had granted a similar 99 year non-exclusive franchise to SWEPCO. SWEPCO provided electric service to the Stonewall area under this franchise. On September 11, 1972, the Village of Stonewall granted a non-exclusive franchise to SWEPCO for a term of 25 years effective October 1, 1972.
The franchises granted by the village to VEMCO and SWEPCO provided for payment by the utility companies to the village of two percent of its gross revenues on all electricity sold and paid for within the village limits, payable quarterly.
After the 1972 franchise grant, VEMCO expanded its electric distribution operations within the municipal limits of Stonewall and continued to provide electric service to those service locations which previously existed within the limits of Stonewall prior to 1972, as did SWEPCO.
Upon expiration of the 15 year franchise granted to VEMCO by the Town of Stonewall, *706 after unsuccessful negotiations for renewal of the franchise, the town refused to renew VEMCO's franchise because its rates are higher than SWEPCO's, and ordered VEMCO to cease and terminate furnishing electrical service in Stonewall. The town demanded that VEMCO coordinate with SWEPCO the transfer of all of its customers within the municipal limits of the town to SWEPCO and thereafter to remove all of its facilities located within the municipal limits. The town had its VEMCO service to the town hall disconnected and SWEPCO began serving electricity to this facility. About 35 or 40 of VEMCO's customers had their VEMCO service disconnected and SWEPCO, upon request, began serving those former VEMCO customers and locations. SWEPCO has applications pending from about 75 other customers who wish to discontinue the VEMCO service and obtain service from SWEPCO.
Following these events, VEMCO filed the present action.

FRANCHISE RIGHTS
The appeal and answer to the appeal present the issue of what rights, if any, VEMCO has to continue to provide electric service to locations within the corporate limits of the Town of Stonewall under or flowing from the 99-year franchise granted by the parish in 1938 and/or the expired 15-year franchise granted by the town in 1972.
The decisions in City of Thibodaux v. Louisiana Power & Light Company, 126 So.2d 24 (La.App. 1st Cir.1960) and Town of Coushatta v. Valley Electric Membership Corporation, 139 So.2d 822 (La.App. 2d Cir.1962) established the principle that upon annexation of an additional area by a municipality, the utility company holding a franchise from the parish has the right to continue to serve the locations served at the time of annexation, but cannot serve new or additional locations within the corporate limits of the municipality. The utility's rights under the parish franchise, that is the right to furnish electric service, is a valuable property right which cannot be abrogated or taken without due process. Mere annexation does not afford due process; expropriation and payment of just compensation is required in order to terminate or take the utility's franchise rights as to locations served on the date of annexation. However, a parish franchise is granted subject to the right of a municipality to expand by annexation; therefore, the parish franchise carries with it no vested right to serve additional areas in the annexed area. See also City of Thibodaux v. Louisiana Power & Light Company, 373 F.2d 870 (U.S. 5th Cir.1967); Dixie Electric Membership Corporation, Inc. v. City of Baton Rouge, 440 F.2d 819 (U.S. 5th Cir. 1971); Gulf States Utility Company v. Dixie Electric Membership Corporation, 185 So.2d 313 (La.App. 1st Cir.1966); Town of Kinder v. Beauregard Electric Cooperative Inc., 339 So.2d 891 (La.App. 3d Cir. 1976).
These principles were followed in the federal court expropriation case, cited above, which was a sequel to the state court decision, cited above, recognizing the right of the City of Thibodaux to expropriate the utility company's facilities and franchise rights in the newly annexed area. In fixing just compensation the federal court recognized that the utility was entitled to be compensated for its rights under the parish franchise to serve existing locations for the remaining term of the parish franchise but the utility was not entitled to be compensated for the value of potential growth and expansion because no such right existed under the parish franchise after annexation by the municipality.
The same principles that apply to annexation by a municipality apply to incorporation of a newly formed municipality. The rights of the utility serving locations in the incorporated area under a previously granted parish franchise continue as to locations existing at the time of incorporation, but the utility cannot expand its service within the area without a municipal franchise.
These principles are generally in accord with decisions in other states. See Antieau's Municipal Corporation Law, *707 § 1A.25 and § 29.06, and cases cited therein. Section 29.06 of this treatise states in part:
Although the judicial precedents are not completely uniform, courts are inclined to hold that a public utility having a valid franchise in an area annexed by a local government cannot be required by the expanding local government to terminate its operations in the annexed areas without just compensation."
Thus, after incorporation of Stonewall in 1972, VEMCO had continuing rights under the franchise granted by the parish to continue to serve existing locations in the incorporated area for the remaining term of the parish franchise, but had no right to serve new or additional locations without a franchise from the municipality.
Shortly after incorporation, VEMCO applied for and was granted a franchise from the village, giving it the right to furnish electric power within the municipal limits for a period of 15 years. This franchise gave VEMCO the right to serve new and additional locations within the corporate limits, and to this extent supplemented its rights under the franchise originally granted by the parish. It can be forcefully argued that the town franchise replaced and superseded the parish franchise. However, we believe the better view is that the municipal franchise only supplemented the parish franchise. There is no evidence in this record that either VEMCO or the town intended that VEMCO give up its rights under the parish franchise to furnish electricity to the existing locations for the remaining term of the parish franchise which extended well beyond the term of the town franchise.
When the town franchise terminated by expiration of its stipulated term, VEMCO's rights under the municipal franchise terminated. Basic contract and franchise law holds that when the term of a franchise ends, the right of the franchisee terminates and the franchisee can be required to cease service and remove its facilities.
In the case of Canal & Claiborne Street Railroad Company v. City of New Orleans, et al, 39 La.Ann. 709, 2 So. 388 (La.1887) the Court passed on a railroad franchise which had been awarded for 20 years. After the 20 year period expired, the City proposed to sell the same privileges and rights to others and plaintiff sought to enjoin the sale. In rejecting plaintiff's demand the Louisiana Supreme Court held:
"In the exercise of her sovereign right and volition, the city sold to plaintiff the privilege of this right of way for twenty years and no longer. The term has expired. The plaintiff has no longer any such right or privilege. The sovereign rights of the city have re-attached, absolutely free from any privilege of plaintiff. Her sovereign power over her streets, delegated for the convenience and welfare of her people, cannot be restrained in its exercise to await the settlement of controversies touching rights and obligations, not concerning the franchise or privilege itself, but other private property.
* * * * * *
Under the views heretofore expressed, plaintiff's right to occupy the streets with railroads or to use the right of way over them, has absolutely expired, and the city has the power to sell and locate the right of way thereafter to be granted according to its will.
* * * * * *
Whether or not this would be a ground for injunction it is obvious that, under the clause above quoted, no such obstacle exists to its becoming a bidder, and that it may purchase, if it should be the adjudicatee, without waiving any of its legal rights, and that any other purchaser, who should seek to use `existing tracks,' could not use plaintiff's property situated on said tracks, without an equitable settlement therefor. Indeed, the city does not propose to sell or transfer any property of plaintiff, but only the privilege or franchise of the right of way, plaintiff's interest in which has absolutely terminated."
*708 To the same effect is McQuillen's Municipal Corporations, § 34.50, where the rule is stated as follows:
"If the franchise is for a fixed time, it terminates at the expiration of such time...."
In Detroit United Railway v. City of Detroit, 229 U.S. 39, 33 S.Ct. 697, 57 L.Ed. 1056 (1913) the Supreme Court found that where a franchise, pursuant to which a Railway Company had been operating within the municipality, had expired by its own terms, the municipality had the right to not only prohibit the company from further operations but also to demand that all the franchisee's facilities be removed. For the court, Justice Day wrote (at pages 45-46):
"We are of the opinion that where a street railroad is authorized to operate in the streets of a city for a definite and fixed time, and has enjoyed the full term granted, it may, upon failure to renew the grant, be required, within a reasonable time, to remove its tracks and other property from the streets* * * we are unable to see than any contractual obligation was impaired or that the property of the Railway was taken without due process of law, and these are the contentions as to Federal questions argued in this connection."
McQuillen's Municipal Corporations, § 34.51 restates the rule that at the expiration of the franchise the former franchisee may be dispossessed as follows:
"... The former grantee may be compelled to discontinue the use of the streets, and to remove its property at its own expense, and it does not acquire any right to adverse possession....
Generally, upon the expiration of a municipal franchise granted to a public utility, there is no longer any contractual relationship between the municipality and the utility...."
This general rule is stated in Section 29.09 of Antieau's Municipal Corporation Law in this manner:
"In the absence of an agreement to the contrary, after expiration of a franchise the public utility has no continuing right to use the municipal streets or property, unless by its conduct the local government is estopped to deny the right. In a proper case the doctrine of estoppel is applicable under general principles to prevent a local government from ousting a public utility even though its franchise has expired. When a public utility is ousted at the expiration of its franchise, its property continues to belong to it, absent come contractual provision to the contrary.
Generally, local governments can refuse to renew a utility's franchise and compel the utility to remove its facilities from public streets and properties and its operations from the municipality."
The rights and duties of the city and of the public utility upon the expiration of a franchise to use the city streets are discussed at length in 112 A.L.R. 625-643, where it is stated:
"In accordance with the view generally held by the courts to the effect that upon the expiration of its city franchise, a public utility's right to use the city streets ceases, it has been held that, in the absence of an inconsistent statute, a city has the optional right to oust a public utility whose city franchise has expired...."
Courts in other jurisdictions have consistently held that a franchisee's rights end with the termination of the franchise. See McQuillen, supra, § 34.50, 34.51. See, for example, Texas-New Mexico Utilities Co. v. City of Teague, 174 S.W.2d 57 (Tex.Civ. App.1943); Walker Brothers Catering Co. v. Detroit City Gas Co., 230 Mich. 564, 203 N.W. 492 (1925); Village of Grandville v. Grand Rapids H & C Railroad Co., 225 Mich. 587, 196 N.W. 351 (1923).
The recent decision in National Bench Advertising Inc. v. Parish of Jefferson, 458 So.2d 179 (La.App. 5th Cir.1984), although not involving a public utility, squarely supports defendants' position. There the parish granted an exclusive franchise for the placement of benches, containing advertising messages, at bus stops. The franchise had a three year term which expired. Plaintiff, holder of the expired franchise, was officially informed by the *709 parish that the franchise had expired and requested to remove its benches. It refused and filed suit, very much in the mode of VEMCO in the matter under consideration.
The trial court ruled against plaintiff. In affirming the appellate court said:
"It is well settled law that a contract (i.e. the franchise) between parties is valid and binding between them and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. Art. 1945; Rebstock v. Birthright Oil & Gas Co., 406 So.2d 636 (La.App. 1st Cir.1981) and Pendleton v. Shell Oil Co., 408 So.2d 1341 (La.1982)."
The court thus held that the franchise terminated under its own terms and, necessarily, those rights that the franchisee held under the franchise also terminated at that time. The benches were ordered removed.
Thus, VEMCO's rights to serve customers established under the municipal franchise have terminated, and the town can order removal of VEMCO's facilities installed under that franchise. Removal of the facilities, cessation of service by VEMCO, and the furnishing of new service by SWEPCO must be orderly and within a reasonable time frame. These matters remain to be dealt with in this litigation. At this stage of the litigation, the trial court was correct in denying VEMCO a preliminary injunction as to locations established under the municipal franchise.
Nevertheless, although VEMCO's rights under the municipal franchise have terminated, its rights under the parish franchise continue to exist. It is entitled to continue to serve locations existing on the date of incorporation. VEMCO is entitled to protect its franchise rights by injunction. Accordingly, the trial court was correct in enjoining the town from enforcing its order to remove facilities necessary to serve locations existing prior to incorporation in 1972 and from interfering with VEMCO's service of those locations. Likewise the trial court was correct in denying the injunction as to facilities and locations established later under the now expired town franchise. Those parts of the trial court judgment will be affirmed.
VEMCO argues that if a utility continues to have property rights including the right to serve existing locations after a parish franchise expires by reason of annexation or incorporation, it should have the same rights after expiration of the municipal franchise. The answer to this argument is that the parish franchise did not terminate upon annexation or incorporation; the franchise rights continued as to facilities and locations constructed and served under that franchise. On the other hand, the franchise granted by the town terminated under its own terms, agreed upon by the parties.

INJUNCTIVE RELIEF AGAINST SWEPCO
VEMCO contends that SWEPCO should be enjoined from taking any action to remove, or cause to be removed, any of the facilities VEMCO has installed and maintained which serve locations VEMCO is entitled to continue to serve. VEMCO also seeks a mandatory injunction requiring SWEPCO to stop serving former VEMCO customers which SWEPCO started serving after the VEMCO franchise expired.
The evidence shows that upon application by a customer being served by VEMCO, SWEPCO has installed connections and began serving such customers after the VEMCO facilities are disconnected by a third party electrician, and that SWEPCO has additional applications pending.
Continuance of this practice by SWEPCO pending this litigation could result in irreparable injury to VEMCO. LSA-R.S. 45:123 prohibits one utility from serving the customer of another utility until the customer is released by the serving utility, or the Public Service Commission so orders after issuing a rule to show cause. This statute does not apply where franchise rights are affected, but here both companies have franchise rights as to locations served by VEMCO in 1972 so application of the statute would not seem to affect franchise *710 rights. VEMCO alleges the exclusive authority of the Public Service Commission in this area of the dispute, although the authority and jurisdiction of the Public Service Commission as it relates to this entire case has not been argued or briefed on appeal.
In any event, in order to preserve the status quo and prevent possible irreparable injury pending this litigation, a preliminary injunction should issue enjoining SWEPCO from serving or interfering with VEMCO's service to locations currently served by VEMCO which VEMCO was serving prior to October 16, 1972.[1]
However, a mandatory preliminary injunction will not be issued to undo what has already been done prior to suit being filed.

EXCEPTIONS
Although not discussed at any length in the briefs of the parties, this appeal presents for review the judgment of the trial court dealing with the exceptions filed by defendants, particularly insofar as it sustains, at least in part, the peremptory exceptions of no cause or right of action.
Having granted plaintiff VEMCO partial relief against both the town and SWEPCO, it follows that the exceptions of no cause and right of action filed by those defendants should not have been sustained. Accordingly, that part of the judgment will be reversed and those exceptions will be overruled.
The other exceptions and motions were denied or overruled, and are interlocutory judgments which need not be dealt with on this appeal.

COSTS
We find no abuse of discretion by the trial court in assessing costs one-half to plaintiff and one-half to defendants.

REMAND
The matters before this court on this appeal are the preliminary injunction and the peremptory exceptions which were sustained. The case has not been tried on the merits of the prayer for declaratory judgment or for a permanent injunction. There are issues presented by the pleadings yet to be determined. There may be issues concerning the jurisdiction and authority of the Public Service Commission. See and compare Cajun Electric Power Cooperative, Inc. v. Louisiana Public Service Commission, 544 So.2d 362 (La.1989); Fremin's Food & Furniture, Inc. v. Teche Electric Cooperative, Inc., 545 So.2d 998 (La.1989); Central Louisiana Electric Co., Inc. v. Louisiana Public Service Commission, 344 So.2d 1046 (La.1977); Central Louisiana Electric Co., Inc. v. City of Franklin, 519 So.2d 781 (La.App. 1st Cir. 1987), writ denied 521 So.2d 1155 (La.1988). The case will be remanded for further proceedings.

DECREE
For the reasons assigned, the judgment granting a preliminary injunction is amended to enjoin SWEPCO from making connections to serve electric power to locations presently served by VEMCO which were being served by VEMCO prior to October 16, 1972. Otherwise, the judgment, as amended, is affirmed. The judgment sustaining the exceptions of no cause or right of action filed by defendants is reversed and the exceptions are overruled. The case is remanded to the district court for further proceedings. Costs of the appeal are assessed one-half to VEMCO and one-half to the Town of Stonewall and SWEPCO.
Reversed in part, amended, and as amended affirmed.
NOTES
[1] The trial court preliminary injunction refers to service locations existing prior to October 16, 1972, the date the franchise was granted by the village, rather than to August 11, 1972, the date of incorporation of the village. No issue is made on appeal as to which date is more appropriate, and we make the injunction against SWEPCO conform with the trial court judgment.