WATSON, Justice.*
In this dispute about the cost of electricity, a member of an electric cooperative seeks to cancel its membership in order to connect with another electric utility.
On September 12,1979, Fremin’s Food & Furniture, Inc., through its president, Ray- *999 ward Fremin, signed an “Application for Membership and Electric Service” in Teche Electric Cooperative, Inc. This application was accepted by Teche and electric service was supplied to Fremin’s warehouse in New Iberia, Louisiana. On October 26, 1982, Fremin signed a second application to obtain cooperative membership and electric service for his retail store.
Paragraphs 4 and 6 of the applications provide:
4. The Applicant will comply with and be bound by the provisions of the articles of conversion and by-laws of the Cooperative, and all amendments and additions thereto, and such rules and regulations as may from time to time, be adopted by the Cooperative.
******
6. The acceptance of the application by the Cooperative shall constitute an agreement between the Applicant and the Cooperative and the Contract for electric service shall continue in force for one year from the date of [sic] service is made available by the Cooperative to the Applicant and thereafter until cancelled by at least 30 days written notice given by either party to the other.
It is undisputed that Teche accepted both applications and commenced electric service, thereby contracting with Fremin to provide electricity for one year thereafter subject to the cancellation provision under Paragraph 6, quoted above.
On June 17,1983, Fremin asked Teche by letter to release his warehouse from Teche’s membership because of high utility costs. On June 28, 1983, a special meeting of Teche’s board of directors discussed Fre-min’s request. The board unanimously rejected the requested release. On December 18, 1985 Fremin again requested cancellation of the membership, stating that he planned to secure electrical services for his warehouse from Central Louisiana Electric Company, Inc. (CLECO). Teche’s board of directors refused this request at its regular board meeting on January 16, 1986. In addition to written notices asking cancellation, Fremin made numerous verbal demands for release.
On August 11, 1986, Fremin filed suit for a declaratory judgment against Teche, seeking cancellation of both contracts for electrical service and damages sustained by Teche’s refusal to terminate the contracts. In the alternative, Fremin asked for injunc-tive relief and damages sustained due to Teche’s alleged misrepresentations concerning the cost of its service compared with CLECO’s. Teche filed exceptions of lack of subject matter jurisdiction, no right of action, no cause of action, lack of amicable demand and prematurity on the ground that Fremin should first seek relief from the Louisiana Public Service Commission. After a hearing, the exceptions were denied and Teche answered the suit.
Both parties filed motions for summary judgment. The trial court granted Teche’s motion, finding that Fremin had not given the proper written notice necessary to terminate electrical service when he had requested cancellation of the warehouse membership.
The court of appeal reversed[1], holding the trial court was clearly wrong in deciding that Fremin’s letters were not requests for termination of electric service. The contracts between the parties were declared terminated. Fremin’s memberships and his Teche electric service were can-celled. The appellate court pretermitted the questions of whether LSA-R.S. 45:123[2] *1000 would prohibit another utility from subsequently furnishing electric service to Fre-min. The suit was remanded to the trial court for further proceedings on Fremin's claim for damages or, alternatively, injunc-tive relief.
A writ was granted to consider the judgment.[3]
Cajun Electric Power Cooperative, Inc. v. Louisiana Public Service Commission, 544 So.2d 362 (La.1989), held that an electric cooperative is a public utility, subject to the regulatory jurisdiction of the public service commission. La. Const.1974, Art. IV, § 21(B).[4] Both parties conceded in oral argument that this dispute might belong before the public service commission. The dispute as to membership and electric service is within the jurisdiction of the Public Service Commission. Therefore, the trial court erred in failing to sustain the exception of subject matter jurisdiction. Legal rights to damages, if any, are reserved.
Based on the foregoing, the exception of subject matter jurisdiction is sustained.
EXCEPTION SUSTAINED; SUIT DISMISSED.

 Associate Justice Harry T. Lemmon did not sit; Judge Pike Hall, Jr., Chief Judge of the Court of Appeal, Second Circuit, participated as Associate Justice pro tempore.

. 533 So.2d 1347 (La.App. 3 Cir.1988).

. A. (1) No electric public utility shall construct or extend its facilities or furnish or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within three hundred feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility. However, nothing contained herein shall preclude:
(a) Any electric public utility from extending service to an applicant for service at an un-served point of connection located within three hundred feet of an existing electric line of such electric public utility, unless:
(i) Such line was not in operation on April 1, 1970, and
(ii) The point of connection is located within three hundred feet of an existing electric *1000 line of another electric public utility, which line was in operation on said date, or
(b) Any electric public utility from extending service to its own property or to another electric public utility for resale.
(2) Further, any consumer receiving electric service from a public utility that is subject to the jurisdiction of the Louisiana Public Service Commission who feels aggrieved with the electric service being received by him may apply to the Louisiana Public Service Commission for an order directed to his present supplier to show cause why the consumer should not be released from said supplier, and if the commission shall find that the service rendered to such consumer is inadequate and will not be rendered adequate within a reasonable time the release shall be granted.
B. As used in this Section, “electric line" means a line constructed and operated for the transmission or distribution or transmission and distribution of electricity, and that was not originally constructed for the principal purpose of preempting territory.
C. Nothing in this Section shall either prohibit or mandate the performance by any parish, municipality, political subdivision, or combination thereof, of any agreement for the sale of electric power executed prior to January 1, 1984, or any renewal of such agreement. Nothing in this Section shall prohibit or mandate in the performance of such agreement the furnishing of service to persons and business organizations being served by another electric public utility.
D. Notwithstanding any other provision of this Section, any municipally-owned or operated utility may furnish or offer to furnish electric service to any point of connection for a retail consumer who is not being served by another utility without the necessity of obtaining the written consent of any other utility if such point of connection is within one mile of such municipality’s corporate limits, as such corporate limits of a municipality with more than fifty megawatts of peak load exist on the effective date of this Section and on every third anniversary date of the effective date of this Section, and as such corporate limits of all other municipalities which have fifty megawatts or less of peak load now or in the future exist from time to time.
E. Nothing in R.S. 45:121, 45:123, 45:1161, 45:1175, or R.S. 12:426 shall alter the rights or authority of municipalities with respect to franchises within the corporate limits of a municipality as such limits exist from time to time.

. 539 So.2d 624 (La.1989).

. Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.