## BURNS v. SCHOTZ.

**1. TRADE-MARKS AND TRADE NAMES—INJUNCTION—LACHES.**

Plaintiffs were not guilty of laches, where they commenced suit to enjoin defendant from using the trade name "Dog Supply House" about 2 months after they learned he was competing with them in the retail trade under the assumed name of "The Dog House" at a place some 4-1/2 miles distant from plaintiffs' place of business although for some 4 years previously defendant had conducted a wholesale business from his home under such name and plaintiffs were cognizant of such fact.

**2. SAME—CONFUSION—DAMAGES—EVIDENCE.**

The test of whether or not defendant's trade name may be enjoined is whether the similarity or resemblance to that used by plaintiffs is calculated or liable to produce confusion as to identity, with consequent damage, a question depending upon the facts proven in each case.

**3. SAME—UNFAIR COMPETITION—EVIDENCE.**

There must be actual competition shown from specific instances or as a natural tendency of defendant's acts in order to prove unfair competition when similar trade names are used by the parties.

**4. SAME—FUTURE COMPETITION AND DAMAGE—EVIDENCE.**

Plaintiffs, engaged in operating a pet shop under the assumed name "The Dog House" were not entitled to enjoin defendant from using the assumed name of "Dog Supply House" under evidence presented, where there was but little confusion in the telephone or mails and no testimony introduced by any customer to show unfair competition, plaintiffs' fear of future deception of the public by defendant creating damage to them not being sufficient to sustain decree in their favor.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur, Trade-marks, Tradenames, and Trade Practices § 156.
[2–4] 52 Am Jur, Trade-marks, Tradenames, and Trade Practices §§ 95, 167–169.
[2–4] Actual competition as necessary element of trade-mark infringement or unfair competition. 148 ALR 12.

Appeal from Wayne; Maher (Thomas F.), J. Submitted June 10, 1955. (Docket No. 56, Calendar No. 46,403.) Decided October 3, 1955.

Bill by James H. Burns and Irma V. Conway, copartners doing business as The Dog House, against Otto W. Schotz, doing business as Dog Supply House, to restrain use of assumed name. Decree for plaintiffs. Defendant appeals. Reversed.

*David B. Lichtig,* for plaintiffs.

*Samuel W. Leib* (*Marvin W. Reider,* of counsel), for defendant.

KELLY, J. The trial court granted, in part, plaintiffs' request for an injunction restraining defendant from using the trade name "Dog Supply House." Defendant appeals, contending that the proofs failed to establish that defendant's trade name was calculated to deceive the public and that plaintiffs were guilty of laches.

In 1939 plaintiff Irma V. Conway established a pet shop at 14900 Livernois avenue, Detroit, selected the name "The Dog House" and filed assumed name certificate with the Wayne county clerk. In 1945 she formed a partnership with plaintiff Burns, and the partnership certificate for doing business under the name of "The Dog House" was promptly filed.

In 1948 defendant and appellant Otto W. Schotz purchased, in Toledo, Ohio, a business known as "Dog Supply House." He paid $9,300, although there was a merchandise inventory of only $500, because the Toledo concern had built up a national mail-order business under the name "Dog Supply House;" had developed an extensive mailing list, and had a special design of hunter's type flashlight used especially in coon hunting.

Appellant moved his stock and mail-order business to Detroit, and registered the trade name "Dog Supply House" with the county clerk on May 20, 1948. He operated the mail-order business from his home until February, 1951, when he moved the business to 16210 Grand River, which location was 4-1/2 miles from plaintiffs' place of business.

Question 1: *Were plaintiff's guilty of laches?*

Appellant testified that in 1948 when he was operating his mail-order business from his home, Burns came to see him. He described Burns as "pretty wrought up about my using the name 'Dog Supply House.'" Appellant testified that Burns told him that he (Schotz) "came into Detroit and took that name in order to benefit by his (Burns) past business in Detroit;" that he told Burns he had no such intentions; that he bought the name because the name and business were advertised and in circulation throughout the United States; that Burns told him that if he went into business and competed with him in the sale of dog supplies he would spend his last cent to stop him and, "I said I had no intention of doing it. I wouldn't say whether I will or won't. I said, 'I don't intend to open a store. I would rather have it the way I had.'"

Appellant's contention that plaintiffs were guilty of laches cannot be sustained in view of appellant's testimony that he was warned by appellee Burns in 1948 that if he went into business and competed with appellees in the sale of dog supplies they would take action. Appellees stated their position as follows:

"Lulled into a false sense of security by defendant's statement that he was not engaged and did not intend to engage in the retail business and in competition with them plaintiffs felt no immediate cause for alarm. There would have been little, if any, purpose of commencing suit when plaintiffs first discovered the existence of defendant's business. They

were engaged in the retail trade, defendant in a wholesale, direct mail business. Both sold vastly dissimilar merchandise. Under the circumstances then existent it is doubtful that plaintiffs could have been afforded the relief they now seek.

"However, in 1952, when Mr. Schotz entered the retail field and began to stock and sell merchandise kindred to that of plaintiffs, he then became in direct competition with them."

Appellee Burns testified that he first discovered that appellant was competing directly with him in the retail trade in August, 1952, and appellees filed their bill of complaint on October 15, 1952.

Question 2: *Did plaintiffs' proofs fail to show that defendant's trade name was calculated to deceive the public and that such deception was actual or probable?*

In *Federal Engineering Co.* v. *Grieves,* 315 Mich 326, this Court held that the true test in cases of this kind is whether the similarity or resemblance of names is calculated or liable to produce confusion as to identity, with consequent damage, and that that question depends upon the facts proven in each case.

The trial court in his opinion relied upon *Weisman* v. *Kuschewski,* 243 Mich 223, 228, 229, to justify the granting of injunctive relief and quoted from said decision as follows:

" 'In order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of plaintiff or to deal with defendant thinking he was dealing with plaintiff. It is sufficient to show that such deception will be the natural and probable result of defendant's acts. But either actual or probable deception and confusion must be shown, for if there is no probability of deception,

there is no unfair competition. * * *" 38 Cyc, pp 773–775."

In the above case it was held that plaintiffs had failed to show sufficient facts to prove either actual or probable deception, and a decree was entered without prejudice to plaintiffs' rights to future action for unfair competition. The Court held that the 2 names "Kuschewski Bros. Coal Co." and "John Kuschewski Coal Co." were not similar enough to create confusion in the public mind to justify injunctive relief, and, that while there was some showing of a mixup of mail and coal cars consigned to defendants and delivered to plaintiffs, as well as claim by plaintiffs that their business decreased by 1/2, there was no competent evidence that the public had been misled or confused.

*Good Housekeeping Shop* v. *Smitter,* 254 Mich 592, established the principle that in order to prove unfair competition there must be actual competition shown from specific instances or as a natural tendency of defendant's acts.

The record in this case establishes that 98%, or more, of defendant's business is the sale of items by mail order. Appellees are not engaged in the mail-order business. While it is true that appellant does sell dog supplies at retail, such sales do not constitute 2% of his total business. The other 98% consists of selling flashlights and hunters' supplies. Appellees do not offer or sell such items. Appellee Burns admitted that he had no proof that appellant's business had in any way affected his business, and stated: "If he (appellant) affected it at all, it has been small, but it is happening now and will happen in the future in an expanding sense."

Appellees introduced proof that there was confusion caused by misdelivery of mail shortly after appellant moved his business from Toledo to Detroit.

Defendant admits this, but testified that as soon as this situation was called to his attention he corrected it by having the postal authorities designate a correct postal zone in addition to his box number, and claims that this resolved the problem in July, 1948, less than 2 months after his purchase of the business. Appellee Burns' testimony on cross-examination confirms appellant, when he admitted that after correcting the confusion that arose in regard to mail this confusion ended.

Appellees' endeavor to prove confusion by telephone calls would not sustain injunctive relief. Appellee Conway testified to 4 telephone calls in 1 year. Appellee Burns asserted there were many other calls, but both appellees admitted the calls were in regard to merchandise they did not handle and constituted inquiries in regard to flashlights.

The witnesses were confined to the parties to the suit and a Mrs. Selman, defendant's employee. No testimony was introduced by any customer to show unfair competition.

The record merely shows that appellees thought that at some time in the future appellant's business might be operated in such a manner as to deceive the public and create damage to appellees. This is not sufficient proof to sustain the trial court's decree.

The decree granting the injunction is set aside without prejudice to appellees' rights for future action. Costs to appellant.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.