## BUSCEMI'S INC v ANTHONY BUSCEMI DELICATESSEN AND PARTY STORE, INC

Docket No. 78-3679. Submitted February 20, 1980, at Detroit.—Decided April 21, 1980.

Plaintiff, Buscemi's Inc., brought an action in the Macomb Circuit Court against Anthony Buscemi Delicatessen and Party Store, Inc., to enjoin the use of the name "Buscemi". The court, Howard R. Carroll, J., held that "Buscemi" as used by plaintiff for over 20 years had acquired a secondary meaning when used in connection with "a business commonly referred to as a delicatessen, selling pizza, submarine sandwiches, torpedo sandwiches and other food products for consumption off the premises including but not limited to beer, wine and liquor". The court also found that the public was confused when defendant Anthony Buscemi Delicatessen and Party Store, Inc., was opened in Clinton Township in Macomb County, creating the mistaken belief that defendant's business was actually operated by plaintiff. The court ruled that, notwithstanding the fact that the Buscemi surname was shared by Paul Buscemi, owner of plaintiff, and Anthony Buscemi, owner of defendant, plaintiff had acquired the exclusive right to use the name in connection with the delicatessen business and enjoined defendant "from using the words Buscemi or Buscemi's either alone or in any form or combination * * * likely to create a connection * * * in the mind of the public between Buscemi or Buscemi's and the products of plaintiff". An amended order of the court set the territorial extent of the injunction as Macomb, Oakland and Wayne Counties. Plaintiff appeals from the court's failure

REFERENCES FOR POINTS IN HEADNOTES

[1] 74 Am Jur 2d, Trademarks and Tradenames §§ 57, 64 et seq.
  Right, in absence of self imposed restraint, to use one's own name for business purposes to detriment of another using the same or a similar name. 44 ALR2d 1156.
[2] 74 Am Jur 2d, Trademarks and Tradenames § 64 et seq.
  Right, in absence of self imposed restraint, to use one's own name for business purposes to detriment of another using the same or a similar name. 44 ALR2d 1156.

to include St. Clair, Washtenaw, Lapeer and Monroe Counties within the protected area. *Held:*

A person generally has a right to use his own name honestly in his own business even though he may thereby incidentally interfere with or injure the business of another having the same name. However, a name may, by appropriation and actual and exclusive use, come to denote in the minds of the public the product of some particular person or factory or business and, thus, acquire a secondary significance, which is properly the subject matter of exclusive right. A person using a name that has acquired a secondary meaning is entitled to exclusive right to its use in the geographic area where the name has acquired the secondary meaning but is not entitled to protection in geographic fields of potential expansion where the name has not acquired the secondary meaning or where no bad faith has been shown on the part of the other party using the name. Since no bad faith was shown or secondary meaning acquired in the counties not included in the protected area, the trial court did not err in failing to include them.

Affirmed.

1. NAMES — SECONDARY MEANING — EXCLUSIVE USE.

A person generally has a right to use his own name honestly in his own business even though he may thereby incidentally interfere with or injure the business of another having the same name; however, a name may, by appropriation and actual and exclusive use, come to denote in the minds of the public the product of some particular person or factory or business and, thus, acquire a secondary significance, which is properly the subject matter of exclusive right.

2. NAMES — SECONDARY MEANING — EXCLUSIVE USE — FIELD OF POTENTIAL EXPANSION.

A person using a name that has acquired a secondary meaning is entitled to exclusive right to its use in the geographic area where the name has acquired the secondary meaning but is not entitled to protection in geographic fields of potential expansion where the name has not acquired the secondary meaning or where no bad faith has been shown on the part of the other party using the name.

*Joseph E. Mihelich,* for plaintiff.

*Bruce A. Karash,* for defendant.

Before: Bashara, P.J., and T. M. Burns and
D. F. Walsh, JJ.

D. F. Walsh, J. On March 7, 1977, the Macomb
County Circuit Court issued a written finding that
the name "Buscemi", as used by plaintiff, Bus-
cemi's Inc., for over 20 years, had acquired a
secondary meaning when used in connection with
"a business commonly referred to as a delicates-
sen, selling pizza, submarine sandwiches, torpedo
sandwiches and other food products for consump-
tion off the premises including but not limited to
beer, wine and liquor". The court also found that
the public was confused when defendant Anthony
Buscemi Delicatessen and Party Store, Inc., was
opened in Clinton Township, Macomb County, in
September, 1975, creating the mistaken belief that
defendant's business was actually operated by
plaintiff. Notwithstanding the fact that the Bus-
cemi surname was shared by Paul Buscemi, owner
of plaintiff, and Anthony Buscemi, owner of defen-
dant, the court ruled that plaintiff had acquired
the exclusive right to use the name in connection
with the delicatessen business. Defendant was "en-
joined in the area which [would be] subsequently
defined by [the] Court from using the words Bus-
cemi or Buscemi's either alone or in any form or
combination with other words which would likely
create a connection and association in the mind of
the public between Buscemi and Buscemi's and the
products sold by [p]laintiff".

On August 15, 1978, an amended order for per-
manent injunction was filed in which the court set
forth the territorial extent of the injunctive relief
granted to plaintiff: the counties of Macomb, Oak-
land and Wayne. It is from the circuit court's
refusal to include the counties of St. Clair, Washte-

naw, Lapeer and Monroe within the protected territory that plaintiff appeals. We affirm.

Generally speaking, one has the right to use his own name honestly in his own business even though he may thereby incidentally interfere with and injure the business of another having the same name *Young & Chaffee Furniture Co v Chaffee Brothers Furniture Co,* 204 Mich 293, 298; 170 NW 48 (1918).

For this reason a surname is not normally the subject matter of a trademark.[1] The doctrine of secondary meaning, however, has been universally recognized as an exception to that rule. With particular reference to the application of the secondary meaning doctrine to surnames, Hopkins on Trademarks, Tradenames and Unfair Competition (4th ed), § 73, p 169, cites *Chickering v Chickering & Sons,* 215 F 490, 494-495 (CA 7, 1914):

"A surname is not the subject-matter of a technical trademark. This is due to the fact that it can not be a clearly distinguishing mark on goods, inasmuch as any one bearing the name has a right to use it in connection with property of his manufacture. It may, however, by appropriation and actual exclusive use, in course of time come to denote in the minds of the public, the product of some particular person or factory or business, and thus acquire a secondary signification. Such a secondary signification, when established, is the subject-matter of exclusive right."

In this case the trial court properly ruled that plaintiff's surname had acquired a secondary meaning in Macomb, Oakland and Wayne counties. There was ample evidence that "defendant's use of the word" Buscemi in its business "leads to confusion and deception of the public and consti-

---

[1] See MCL 429.32(d); MSA 18.638(22)(d).

tutes unfair business competition". *Montgomery Ward & Co, Inc v Ward Furniture & Appliance Co,* 327 Mich 582, 585; 42 NW2d 747 (1950). We find that plaintiff's objection to the geographical extent of the injunctive relief, however, is without merit.

Where reliance must be placed on the doctrine of secondary meaning, because a mark is otherwise nondistinctive, rights in the mark extend only so far as it is shown that the secondary meaning exists.[2]

Plaintiff presented no evidence that the name Buscemi had acquired a secondary meaning in the counties of St. Clair, Washtenaw, Lapeer and Monroe. There was no evidence that, in the minds of persons living in those counties, the name had come to be identified with the products of plaintiff.[3]

Moreover, we reject plaintiff's contention that the injunctive relief should extend to its "natural field of legitimate trade expansion".[4] In *beef & brew, inc v BEEF & BREW, INC,* 389 F Supp 179,

[2] Vandenburgh, Trademark Law and Procedure (2d ed), §§ 2.41, 4.72, pp 68, 134; *Zimmerman v Holiday Inns of America,* 438 Pa 528, 538; 266 A2d 87 (1970), *cert den* 400 US 992; 91 S Ct 456; 27 L Ed 2d 440 (1971), *Drug Fair-Community Drug Co, Inc v Drug Fair, Inc,* 453 Pa 454, 458-459; 309 A2d 363 (1973), *Flavor Corp of America v Kemin Industries, Inc,* 358 F Supp 1114, 1125 (SD Iowa, 1973), *aff'd* 493 F2d 275 (CA 8, 1974); Anno: *Unfair competition: geographical extent of protection of word or symbol under doctrine of secondary meaning,* 41 ALR3d 434, 442, § 4; 3 Callman, Unfair Competition, Trademarks & Monopolies (3d ed), § 77.4(a), pp 363-364 ("In any event, the exclusive right created by such secondary meaning cannot extend beyond the area of its popularity.")

[3] There was evidence that plaintiff had bought 16 minutes of television advertising in March 1978 and that radio advertising was to begin in June 1978, the week of the hearing on the geographical scope of the injunctive relief. These light, sporadic and very recent advertising efforts were not sufficient to indicate establishment of a secondary meaning.

[4] There was evidence of plaintiff's indefinite plans for expansion beyond the three counties (Macomb, Oakland and Wayne) where it presently has stores.

185-186 (D Ore, 1974), the court examined the leading cases which had discussed the zone of expansion theory and found that in each there had been a showing either of secondary meaning in the zone or of bad faith on the part of the defendant. The court observed that "application of the [zone of expansion] doctrine must * * * be sensitively founded in the particular facts and circumstances of the case". *Id.,* 185.[5] The Michigan Supreme Court has been reluctant to extend injunctive relief to a party's field of potential expansion or in response to a plaintiff's contention that the defendant's business might be operated in the future in such a manner as to deceive the public. *Good Housekeeping Shop v Smitter,* 254 Mich 592, 597-598; 236 NW 872 (1931), *Burns v Schotz,* 343 Mich 153, 158; 72 NW2d 149 (1955), *The Fair—South Flint Plaza, Inc v Shoppers Fair of Flint, Inc,* 358 Mich 640, 645; 101 NW2d 342 (1960).

We follow the lead of the *beef & brew, inc* case and find that the zone of expansion doctrine does not aid plaintiff under the facts of this case. There has been no proof of a secondary meaning in the four excluded counties or of bad faith on the part of defendant. We are not persuaded that any equitable rights of plaintiff will be violated by virtue of the territorial extent of the injunction.[6]

---

[5] The zone of expansion doctrine was criticized in *Katz Drug Co v Katz,* 89 F Supp 528, 535 (ED Mo, 1950), *aff'd* 188 F2d 696 (CA 8, 1951):

"Such a doctrine would impose a burden on the innocent junior appropriator. In adopting a trade name or trade-mark, how far must the adopter look to see if a similar mark is in use? If a similar mark is in use, and it is wholly unknown in the area in which the so-called adopter wishes to use it, there is nothing to put him on notice. If the adopter in such a case wishes to open a retail drugstore in St. Louis, must he search Kansas City? Chicago? Des Moines? Denver? It seems unnecessary."

[6] Our review is limited to the ruling made by the circuit court as of the date of the court's order and should not be construed as a determination that Buscemi's Incorporated has not as of some later

We are not convinced that we would have reached a different conclusion than that of the circuit court and we, therefore, decline to disturb the circuit court's order. *Edelman Realty Co v Edelman,* 344 Mich 646, 656; 75 NW2d 29 (1956).

Affirmed. Costs to appellee.

---

date acquired a secondary meaning in an area more expansive than that determined by the trial court.