*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UPPER PENINSULA POWER COMPANY,

Plaintiff/Counterdefendant-Appellant,

v

VILLAGE OF L'ANSE,

Defendant/Counterplaintiff-Appellee,

and

WPPI ENERGY, INC. and UTILITY SYSTEMS
ENGINEERING, INC.,

Defendants-Appellees.

FOR PUBLICATION
November 12, 2020
9:00 a.m.

No. 349833
Baraga Circuit Court
LC No. 2018-006862-CZ

Before: JANSEN, P.J., and FORT HOOD and RONAYNE KRAUSE, JJ.

JANSEN, P.J.

Plaintiff, Upper Peninsula Power Company (UPPCO), appeals as of right the trial court's opinion and order granting defendants', Village of L'Anse (the Village), WPPI Energy, Inc. (WPPI), and Utility Systems Engineering, Inc. (USE), motions for summary disposition under MCR 2.116(C)(8). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the Village's decision to not issue another franchise to UPPCO after the previous, 30-year franchise expired in July 2018. UPPCO is a utility company providing electric power to customers in Michigan's Upper Peninsula. WPPI is a Wisconsin-based regional power company that sells electricity to 51 locally owned electric utilities, including the Village. USE is a company that helps utilities grow service territory and increase the amount of electricity those utilities sell. The Village is located in Baraga County in the Upper Peninsula and is a member of WPPI. UPPCO's claims arise from "the Village's attempts to take or convert UPPCO's existing utility customers by unlawful means and without UPPCO's consent and WPPI and USE's facilitation and funding of that takeover."

-1-

UPPCO had provided utility service in the Village and to the township of L'Anse since the early 1900s. UPPCO's last franchise issued by the Village in 1988 expired on July 26, 2018.[1] The franchise was a nonexclusive franchise, and also provided that

> service under this franchise shall be restricted to the Celotex Corporation and other firms, persons or corporations, who are unable to obtain electric service from the municipally owned utility . . . .

In 1994, the Village annexed from the surrounding township of L'Anse parcels of land that constituted an industrial park known as "Dynamite Hill." UPPCO had served customers within that industrial park.

On December 14, 2015, Village Manager Bob LaFave sent an e-mail to USE President Pat Wheeler, stating that he had "received direction to proceed with trying to get the Dynamite Hill area put onto Village power." LaFave asked Wheeler what the next steps would be. Wheeler indicated that he was going to send some "information with which to make potential customer contacts" and that once those contacts were made, a meeting could be set up with either UPPCO or with the potential customers. LaFave replied that he would prefer to meet with the potential customers first.

On January 7, 2016, the Village sent a letter to all of UPPCO's customers in the Village. The letter stated, in pertinent part:

> The Village of L'Anse is studying an offer of Village electric service to electric consumers within the Village Limits who are currently served by UPPCO. In order to approach UPPCO regarding a proposed transfer of service, it is important that the Village determine which electric consumers desire this proposed transfer of service.

The letter went on to state that the Village was setting up a meeting on January 19, 2016, where all the customers could attend. Further, the letter stated, "UPPCO will not be contacted prior to this meeting, and it is asked that electric consumers receiving this letter not discuss this matter with UPPCO prior to this meeting, as this is purely exploratory in nature at this time."

The January 19, 2016 meeting went on as planned without UPPCO's knowledge or participation. At the meeting, the customers were presented with a summary of the savings they could expect if UPPCO was no longer the electric service provider. On February 3, 2016, the Village approached UPPCO about the Village providing electric service to the Dynamite Hill customers. On March 22, 2016, UPPCO informed Wheeler that it "[did] not intend to give up the customers in the industrial park." The communication also stated that a meeting on this issue would not be productive.

---

[1] The maximum length of a utility franchise permitted under Michigan's Constitution is 30 years. Const 1963, art 7, § 30.

At some point, the Village presented UPPCO's Dynamite Hill customers with an "Agreement to Transfer," which some customers executed. On July 17, 2017, the Village notified UPPCO that the Village planned to not renew the current franchise, which was due to expire on July 26, 2018. The letter explained that it was "in a position to provide service to all customers located in the Village through its own electric distribution system" and "[f]or that reason, the Village has decided not to renew the franchise agreement with [UPPCO]."

On January 19, 2018, the Village sent another letter to the Dynamite Hill electric customers, stating that UPPCO's franchise to serve electric customers in the Village will be expiring and that customers currently receiving electric service from UPPCO will be transferred to the Village's electric system sometime after that franchise expires on July 26, 2018. The Village and Wheeler continued to actively pursue UPPCO's customers with promises of offering electric service for a lower price.

On February 28, 2018, UPPCO again stated that it would not consent to the Village taking UPPCO's customers. UPPCO also explained that the Village could not take over UPPCO's lines within the Village because doing so would prevent UPPCO from serving customers located outside the Village. A couple of weeks later, Village Manager LaFave sent an e-mail to UPPCO stating that there apparently was a misunderstanding because the Village had no intention of preventing UPPCO from the public rights of way to service its customers outside the Village. UPPCO was pleased to hear this clarification but reiterated that it considered "any action by the Village that unreasonably denied the renewal of UPPCO's franchise, seizes UPPCO's distribution assets, or takes UPPCO's customers to be unlawful."

Despite UPPCO's warning, the Village, USE, and WPPI continued to work toward having the Village provide electrical service to UPPCO's customers, including requesting quotes for constructing a duplicate line to the line UPPCO already had constructed to provide service to the Dynamite Hill area. The quotes were due on May 11, 2018, and the work was to be completed by July 31, 2018.

On May 10, 2018, UPPCO submitted a request for a franchise renewal to the Village. One of the provisions in the requested franchise was that UPPCO would be allowed "to transact local business in the Village for the purposes of producing, storing, transmitting, selling, and distributing electricity into and through the Village and all other matters incidental thereto." On July 24, 2018, the Village sent its proposed revisions to UPPCO, making several modifications, including the striking of any provisions related to allowing UPPCO to provide service to *any* customers in the Village, not only those who were "unable to obtain electric service from [the Village]."

Before UPPCO's franchise expired, UPPCO discovered that "certain meter and equipment seals belonging to UPPCO had been removed . . . and replaced with WPPI Energy seals." On August 20, 2018, three of UPPCO's customers requested UPPCO to discontinue supplying electric service, but UPPCO refused. UPPCO explained that it had an "ongoing duty and right" to provide electric service to "all . . . customers currently being served in the Village." Thereafter, the Village hired Penokie Electric to sever certain electric lines leading into UPPCO's meters. While performing this work at the Village's water tower, which was located in the Dynamite Hill area, Penokie damaged a wire between the meter and the service panel, creating a dangerous condition. UPPCO had to de-energize the service so the repair could be effectuated.

UPPCO filed its initial complaint on August 1, 2018, alleging: (1) injunctive relief—Village denying franchise, (2) injunctive relief—severing live electrical lines, (3) trespass, (4) declaratory and injunctive relief—General Law Village Act, (5) impairment of contract, (6) unlawful forcible entry and detainer, (7) tortious interference with business relationship, (8) unfair competition, (9) violation of Michigan Antitrust Reform Act—unlawful contract, combination, or conspiracy, (10) violation of Michigan Antitrust Reform Act—unlawful monopoly, and (11) civil conspiracy. [2]

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(4) and the trial court granted defendants' motions. The court's ruling first addressed UPPCO's contention that the Village could not deny a franchise to UPPCO. The court noted that a franchise is a contract and once a franchise expires on its own terms, there is no continuing duty for the parties to enter into a new franchise agreement. The trial court also rejected UPPCO's argument that the Village's decision to not renew the franchise was reviewable for "reasonableness." The court further elaborated that not only is the Village's decision not reviewable for reasonableness, it is not reviewable at all.

Regarding the Village's solicitation of UPPCO's customers, the trial court ruled that such action leading up to the expiration of UPPCO's franchise was not wrongful. Because of the Village's decision to not renew or grant another franchise to UPPCO, the Village's actions "[r]ather than being tortious interference with [UPPCO's] business expectations and/or unfair competition, such activities, instead, constituted good governance." The court also noted that UPPCO had no business expectations that extended beyond July 26, 2018, the date its franchise with the Village expired.

In addressing UPPCO's claims related to the purported severing of electric lines, the trial court ruled that MCL 750.383a, the statute UPPCO cited, does not "make a person an outlaw who cuts, breaks, injures or tampers with their own property" and that "[t]he line involved was on the customer's side of [UPPCO's] meter." The court recognized, however, that UPPCO was the owner of its equipment seals and that the cutting of them was wrongful. Despite this illegality, the court declined to grant the requested injunction because there were no allegations that any defendant intended on accessing or interfering with any of UPPCO's meters or equipment in the future.[3]

Regarding UPPCO's allegation of impairment of contract, the trial court noted that the contract at issue for this count—the franchise UPPCO received from L'Anse Township (not the Village)—had expired on April 19, 2019, and therefore was moot. Regardless, the trial court found that there was no merit to the allegation. The trial court also dismissed UPPCO's claims related to antitrust and unlawful contract or conspiracy. The court explained that although UPPCO could operate during the time of the franchise without fear of another *public utility*, like DTE or

---

[2] Two amended complaints were subsequently filed.

[3] The trial court noted that it also was relying on MCR 2.116(C)(10) in granting summary disposition on this count. And regarding any damages for this improper act, the court noted that there was no allegation that any damages exceeded $25,000, which deprived the circuit court of jurisdiction.

Consumers Energy, from taking its customers, a *municipality* has explicit authority to offer utility services within its service area. Consequently, the court held that "the Village violated no law in obtaining the assistance of WPPI and/or USE to aid the Village in its desire to serve the electrical needs of all of its residents" and that, likewise, WPPI and USE did nothing wrong in aiding the Village with its endeavors.

This appeal followed.

## II.  STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo.  *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW23d 201 (1998).  "A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone.  The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted.  The motion should be granted if no factual development could possibly justify recovery."  *Beaudrie v Henderson*, 465 Mich 124, 129-130; 631 NW2d 308 (2001).

This Court also reviews constitutional issues de novo.  *Mahaffey v Attorney General*, 222 Mich App 325, 334; 564 NW2d 104 (1997).

## III. REVIEW OF THE VILLAGE'S FAILURE TO RENEW UPPCO'S FRANCHISE UNDER CONST 1963, ART 7, § 29

UPPCO first argues on appeal that the trial court erred by ruling that a municipality's decision to deny a franchise under Const 1963, art 7, § 29, is not subject to judicial review for reasonableness.  We disagree.

This issue deals with the proper interpretation and construction of a constitutional provision.  When construing a provision of Michigan's Constitution, the goal is to identify the original meaning that the Legislature intended to attribute to the words used.  *CVS Caremark v State Tax Comm*, 306 Mich App 58, 61; 856 NW2d 79 (2014).  In doing so, this Court utilizes the rule of common understanding, which provides that the meaning that was the most obvious common understanding of the provision at the time of ratification is the one that should govern.  *Id*.  Const 1963, art 7, § 29, provides:

> No person, partnership, association or corporation, public or private, operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village; or to transact local business therein without first obtaining a franchise from the township, city or village.  Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government.

As this Court has already stated, § 29 addresses three distinct areas.

The first [clause] states that public utilities cannot use the rights-of-way of local units of government for wires, poles, conduits, and so forth without consent; the second clause forbids a utility from conducting local business without first obtaining a franchise; and the third clause declares that local units of government retain the right to reasonably control their highways, streets, alleys, and public places. [*TCG Detroit v City of Dearborn*, 261 Mich App 69, 79; 680 NW2d 24 (2004).]

See also *City of Lansing v State*, 275 Mich App 423, 431; 737 NW2d 818 (2007).

The parties agree that this case involves § 29's second clause, implicating the "franchise power." UPPCO maintains that the Village's decision not to renew UPPCO's franchise is reviewable for "reasonableness." UPPCO relies on the fact that, despite no "reasonableness" language pertaining to that clause, our Supreme Court has read an implicit reasonableness requirement into Clause 1 of § 29. Specifically, our Supreme Court has stated that a local government's consent for a utility to use its highways, streets, alleys, or other public places for the placement of facilities cannot be refused "arbitrarily and unreasonably." *Union Twp v City of Mount Pleasant*, 381 Mich 82, 90; 158 NW2d 905 (1968)[4]; see also *City of Lansing*, 275 Mich App at 432.

UPPCO suggests that this reasonableness requirement should also be read into Clause 2 because Clauses 1 and 2 "perform parallel functions in the world of local government." However, we find this argument to be unpersuasive. A utility's use of a portion of a local government's public rights of way is functionally different from the utility conducting business within the locale. The former has no direct involvement with the local populace, while the latter does. Further, the decisions involving how a utility may operate within the public rights of way appear to be much more nuanced and complicated. Will the electric lines be run overhead or underground? Where will they be placed? How far above ground or how deep below ground will they be? How will they be contained? Where will any poles be placed? Undoubtedly, there are even more considerations.[5] And with so many considerations, there is ample opportunity for a local government to possibly impose some unreasonable requirement, which the Supreme Court seemingly wanted to safeguard against. Cf. *Union Twp*, 381 Mich at 89-90 (stating that local

---

[4] Somewhat notably, the *Union Twp* Court cited *People ex rel Maybury v Mut Gas-Light Co*, 38 Mich 154, 155 (1878), in support of its ruling. *Union Twp*, 381 Mich at 89 n 8. But *Maybury* involved a statute, not a constitutional provision. *Maybury*, 38 Mich at 155, citing Comp L, § 7085. And that statute expressly stated that a gas company was permitted to lay gas pipes through the streets, lanes, and squares of any city, town, or village " 'with the consent of the municipal authorities of said city, town, or village, under such *reasonable* regulations as they may prescribe.' " *Maybury*, 38 Mich at 155 (emphasis added). UPPCO has not identified any equivalent statute governing a local government's decision to grant a franchise under Clause 2.

[5] In *Traverse City v Citizens' Tel Co*, 195 Mich 373, 382-383; 161 NW 983 (1917), the Supreme Court recognized that a municipality's responsibilities involve deciding which streets and in what manner utility lines were to be installed, which includes prohibiting the constructing of poles in locations that will injure or inconvenience the public.

governments retain their right of reasonable control over utility use of public roads because of the inconvenience to residents and businesses that generally results from construction within the rights-of-ways).

Further, we conclude that to the extent that UPPCO relies on the fact that Clause 3 of § 29 contains a "reasonableness" requirement, that reliance is misplaced. This Court has already dismissed such a suggestion: "We reject [the] contention that the limitations placed on the general reservation of authority found in the second sentence of § 29 [i.e., Clause 3] apply to the first two clauses of the first sentence." *City of Lansing*, 275 Mich App at 431 n 3.

Therefore, because the subject matter is vastly different, we conclude that merely because a village's decision related to a utility's use of the village's right-of-way is subject to a reasonableness standard, that does not mean that the same standard should apply to the village's decision related to whether the utility is authorized to conduct business within the village. And importantly, as UPPCO concedes, there is no case imposing such a reasonableness requirement onto a municipality's decision to grant or deny a franchise under Clause 2 of § 29.[6]

UPPCO also avers that to not permit judicial review of the Village's decision not to renew a franchise would lead to absurd and indefensible results, such as allowing a municipality to grant or deny a franchise on the impermissible basis of race or gender. However, none of those variables are present in this case. The question here is whether such decisions are subject to review for reasonableness, and we have concluded they are not. Whether those decisions are subject to review on *constitutional* grounds is another matter; but that question is not presently before this Court, we decline to evaluate such an argument.

UPPCO also claims to have argued in the trial court that it was denied due process. However, this is a mischaracterization of the lower court proceedings. UPPCO did not argue that the Village's decision was reviewable because UPPCO had been denied due process, but rather that if the Village's actions were deemed permissible, then UPPCO should be compensated for the Village's taking of UPPCO's property, i.e., its customers or its right to service those customers. Further, UPPCO never alleged that it was denied due process; at most, it stated that in *Delmarva Power & Light Co v City of Seaford*, 575 A2d 1089 (Del, 1990), the Delaware Supreme Court held

---

[6] UPPCO contends that if a reasonableness standard was applicable, the Village's decision to not grant it a franchise would be unreasonable. We cannot agree. First, UPPCO primarily asserts that to be reasonable, a decision must promote the health, safety, or some other similar reason. UPPCO cites no authority showing that reasonableness can only be defined in this manner. Moreover, the fact that the Village thought it could supply electricity to its residents at less cost to them easily meets any reasonableness requirement. Governments act on behalf of the people. If they can act to benefit those people, which would include any financial benefit, then that would qualify as "reasonable" under any rubric and is not "whimsical and principle-free" as UPPCO claims. Just because the Village did not *have* to deny a franchise to UPPCO does not make its decision any less reasonable. Reasonableness must be viewed from the perspective of the Village or its citizens— *not* from the perspective of UPPCO.

that a municipal utility violated due process requirements when it took a public utility's customers without just compensation. Notably, UPPCO never raised an inverse condemnation claim in its second amended complaint. See *Blue Harvest, Inc v Dep't of Transp*, 288 Mich App 267, 277; 792 NW2d 798 (2010) (" 'An inverse or reverse condemnation suit is one instituted by a [property owner] whose property has been taken for public use without the commencement of condemnation proceedings.' ") (citation omitted).

Regardless, UPPCO has failed to allege facts to show that it was denied due process. The Due Process Clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." US Const, Am XIV.[7] Although the Due Process Clause offers "two separate types of protections—substantive and procedural," procedural due process is at issue in this case. Procedural due process requires notice, an opportunity to be heard, and an impartial decisionmaker. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

Comparatively, "procedural due process requirements apply only if there is a liberty or property interest at stake." *Galien Twp Sch Dist v Dep't of Ed (On Remand)*, 310 Mich App 238, 241; 871 NW2d 382 (2015). As UPPCO has done throughout these proceedings, it simply presumes that it has an entitlement or a property interest. But "[t]o have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement to it*." *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972) (emphasis added). While having the right to service customers (and receive revenue from them) under a valid franchise is a property interest, no such property interest could exist after the expiration of said franchise. That is because after the franchise expired, UPPCO had no legitimate claim or entitlement to provide service within the Village. In other words, although UPPCO may have had a unilateral expectation that it would be issued another franchise, that is all it had. A franchise is a contractual agreement. *City of Niles v Mich Gas & Elec Co*, 273 Mich 255, 262; 262 NW 900 (1935). And the plain and unambiguous terms of the franchise said it would expire 30 years after the July 25, 1988 effective date. There is no mention that the franchise would be reissued or that it was even likely that a new one would be issued.

In *City of Detroit v Detroit United R*, 172 Mich 136; 137 NW 645 (1912), aff'd 229 US 39; 33 S Ct 697; 57 L Ed 1056 (1913), a railway company's franchises to operate in the city had expired. *Id*. at 149-150. The Court stated that when those franchises expired, the "rights" of the company expired as well. *Id*.; see also *Consumers Power Co v Mich Consol Gas Co*, 213 Mich App 82, 88; 539 NW2d 550 (1995). The Court further explained, "[T]he contractual relations between these parties ended upon the expiration of the franchises, and *all rights in the defendant company to occupy the city streets, and maintain and operate a street railway thereon, then terminated*, and defendant thereafter became a trespasser[.]" *Detroit United R*, 172 Mich at 158

---

[7] The Michigan Constitution similarly provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. The Michigan "provision is coextensive with its federal counterpart." *Cummins v Robinson Twp*, 283 Mich App 677, 700-701; 770 NW2d 421 (2009).

(emphasis added). Indeed, the Court went on to state that the city had "the absolute and unquestioned right at any time to compel the defendant company to vacate the streets upon which these franchises have expired, and to require it to remove its property therefrom within a reasonable time." *Id*.

Therefore, when UPPCO's franchise with the Village expired, it had no "right" to continue servicing customer within the Village. And without this right, it had no legitimate claim to service those customers, which is fatal to any claim of a protected property interest. In short, there is no authority to support UPPCO's view that a reasonableness requirement should also be read into a municipality's decision to grant or deny a franchise under Const 1963, art 7, § 29, cl 2, and this we decline UPPCO's invitation to impose one.

## IV. UNFAIR COMPETITION

Next, UPPCO challenges the trial court decision to grant defendants' motion for summary disposition on UPPCO's claims of unfair competition. Again, we disagree with UPPCO's position.

"[T]he common-law doctrine of unfair competition was ordinarily limited to acts of fraud, bad-faith representation, misappropriation, or product confusion." *In re MCI Tel Corp Complaint*, 240 Mich App 292, 312 n 8; 612 NW2d 826 (2000). While it is not necessary to show that any particular person has actually been deceived by a defendant's actions, one could alternatively "show that such deception will be the natural and probable result of [a] defendant's acts." *Burns v Schotz*, 343 Mich 153, 156; 72 NW2d 149 (1955) (quotation marks and citation omitted). Put another way, "if there is no probability of deception, there is no unfair competition." *Id*.

In its second amended complaint, UPPCO premised its claim of unfair competition on the following acts: (1) defendants told UPPCO's customers that once the franchise expired, UPPCO would no longer be able to serve them; (2) defendants told customers that the Village can use its governmental authority to eliminate completion; and (3) the Village "impugned the reputation and maligned UPPCO's cost competitiveness."

Notably, UPPCO on appeal does not argue that these acts constitute unfair competition, and likewise we conclude that they do not where no deception was involved. The franchise granted to UPPCO in 1988 was a *nonexclusive* franchise, which meant that UPPCO was not given the right to be the sole provider of electric service in the Village. See 36 Am Jur 2d, Franchises from Public Entities, § 31 ("[U]nder a nonexclusive franchise the grantor is not precluded from grating a similar franchise to another . . . .").[8] In fact, UPPCO's franchise was even *more* limited. The franchise further provided:

---

[8] Compare with an "exclusive" franchise, in which the grantor promises to not grant any similar franchises to anyone else. 36 Am Jur 2d, Franchises from Public Entities, § 30.

[S]ervice under this franchise shall be restricted to the Celotex Corporation and other firms, persons or corporations, who are unable to obtain electric service from the municipally owned utility . . . .

Thus, not only was UPPCO not given an exclusive right to service the Village, UPPCO was only permitted to service customers *who were unable to obtain electric service from the Village*. This fact is notable because it pertains to UPPCO's allegation in its complaint that it was unfair or deceitful for defendants to inform customers that UPPCO would no longer be able to service them after the franchise expired. UPPCO cannot show how this was deceitful or untrue because once the franchise expired, UPPCO had no right to provide service. Likewise, once the Village became capable of supplying electric service to any customer—even before the franchise expired— UPPCO's right to service that customer ceased. Further, UPPCO never alleged that the cost comparisons and estimates defendants supplied to the customers were not based on the truth. The test is not whether *UPPCO* purportedly was deceived by not being aware of what the Village was planning; the test is whether there was any probability that any *customers* were deceived. *Burns*, 343 Mich at 156. And UPPCO has failed to allege in its complaint any facts to show that there was any probability that any customers were deceived about any material fact. Therefore, any claim of unfair competition based on these cost comparisons cannot be sustained.

We note that UPPCO repeatedly asserts that the Village only wanted to service the most profitable customers, yet the pleadings in this case do not support such an assertion. Indeed, in a 2017 letter from the Village to UPPCO more than a year before the franchise was set to expire, the Village stated that it had determined that it will be able "to provide service to *all* customers located in the Village." UPPCO's view that this is immaterial because the actions started in late 2015 is perplexing. The documents attached to UPPCO's second amended complaint clearly show that the Village in 2015 had decided to reach out to UPPCO's existing customers to gauge their interest. Thus, if there was little or no interest, then the Village would not proceed. In any event, in communications from December 2015, the Village informed USE that the direction was to "try[] to get the Dynamite Hill area put onto Village power." The communication did not say that the plan or direction was to only provide service to a portion of the Dynamite Hill area or only to the most profitable customers. Moreover, assuming *arguendo* that it was the Village's plan to only "poach" the most profitable customers, UPPCO does not fully explain how this constitutes unfair competition. The only way would be if the Village had offered to supply service to certain customers but later reneged and declined to offer service because the customers were not deemed profitable enough. But in that case, UPPCO would retain them as customers, i.e., any "fraud" or "deceit" would inure to UPPCO's benefit.

On the basis of the foregoing, we conclude that the trial court properly dismissed UPPCO's claims of unfair competition.

## V. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AND EXPECTANCY

Next, UPPCO argues that the trial court erred by granting defendants' motions for summary disposition with respect to its claim of tortious interference with a business expectation. We disagree.

-10-

In order to prove a claim of tortious interference with a business relationship or expectancy, a plaintiff must prove "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Cedroni Ass'n, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012) (quotation marks and citations omitted). However, the business expectancy "must be a reasonable likelihood or probability, not mere wishful thinking." *Id*. (quotation marks and citation omitted).

The trial court correctly determined that UPPCO had no valid business expectation. As UPPCO acknowledged in its second amended complaint, its franchise with the Village had an expiration date of July 26, 2018. UPPCO has completely failed to show how it had anything but a unilateral hope or belief that it would continue to service its customers after this date. After July 2018, UPPCO had no right to service any customers. *Detroit United R*, 172 Mich at 158; *Consumers Power Co*, 213 Mich App at 88. Without this right, there was no reasonable expectation to continue to supply electric service. Indeed, once a municipality requests that utility to cease operations, then that utility must do so. See *Detroit United R*, 172 Mich at 158 (stating that after a franchise expires, the municipality has "the absolute and unquestioned right" to oust the utility). As such, the only reasonable expectation UPPCO had after July 2018 was that it *might* be able to continue to provide electric service, but that ability was wholly dependent upon the Village acquiescing to the continued service. Because any expectation after the expiration of the franchise was dependent on the Village, any expectation on UPPCO's behalf can best be described as "hopeful" or "wishful." This is inadequate to maintain a claim of tortious interference of a business relationship or expectancy, and the trial court properly dismissed this claim.

Moreover, UPPCO's 1988 franchise was expressly limited only to those customers that could not obtain electric service from the Village. Thus, UPPCO had no reasonable expectation that it could continue to provide electric service to customers that later could obtain service from the Village. There was nothing in the franchise that indicated that the Village would forever not plan on extending its area of electric coverage. UPPCO has further failed to plead any facts to show how any of defendants' acts were "improper." UPPCO has not articulated how it was illegal, improper, or even unfair for the Village to expand the geographic boundaries of its service area. Meeting with UPPCO's customers without notifying UPPCO beforehand is not improper. Further, supplying those customers with cost estimates indicating that the customers could save money by having the Village provide service also is not improper. The fact that these events took place before the expiration of the 1988 franchise is irrelevant, and UPPCO cites no authority showing otherwise. Simply put, as the trial court recognized, there was nothing improper about the Village starting to plan for life without UPPCO before the franchise was set to expire. Thus, UPPCO could not sustain a claim for tortious interference with a business relationship or expectancy.

VI. CONSTITUTIONAL TAKINGS CLAIM

Finally, UPPCO argues that because the trial court ruled in favor of defendants, it should have also ruled that the Village's acquisition of UPPCO's customers constituted an unconstitutional taking, requiring UPPCO to be compensated. Again, we disagree.

UPPCO's argument implicates the Fifth Amendment of the United States Constitution, which provides, in pertinent part, that "private property [shall not] be taken for public use, without just compensation."  US Const, Am V.[9]  " 'An inverse or reverse condemnation suit is one instituted by a [property owner] whose property has been taken for public use without the commencement of condemnation proceedings.' "  *Blue Harvest*, 288 Mich App at 277 (citation omitted).

Exactly what error UPPCO wants this Court to "correct" on appeal is unclear.  See *Apex Laboratories Int'l Inc v City of Detroit (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 338218); slip op at 5 (stating that this Court is "an error-correcting Court").  The trial court simply granted defendants' motions for summary disposition.  Presumably, UPPCO is arguing on appeal that this was erroneous.  But there are two issues with UPPCO's position.

First, although UPPCO raised the issue of a takings claim in its response to defendants' motions for summary disposition, UPPCO never alleged a takings or an inverse condemnation claim in its second amended complaint.  Therefore, because the trial court—via the motions for summary disposition—was tasked with deciding the viability of the claims UPPCO *actually* alleged in its second amended complaint, there was no need for the court to address other claims that were not raised in that complaint.  Consequently, because UPPCO never asserted a takings claim in its complaint, it was not erroneous for the trial court to fail to declare that such a claim indeed existed and persevered after the dismissal of UPPCO's 11 other, enumerated claims; the trial court was not under an obligation to write this new claim into the complaint and analyze the merits of it.

Second, UPPCO's complaint makes it clear that it had no vested property right.  "One who asserts an uncompensated taking claim must first establish that a vested property right is affected."  *In re Certified Question*, 447 Mich 765, 788; 527 NW2d 468 (1994).

> To constitute a vested right, the interest must be something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property.  [*Id.* (quotation marks, citations, and ellipsis omitted).]

UPPCO cannot establish the necessary property right because after the franchise expired, which is when UPPCO's property purportedly was taken, it had no "right" to provide electric service to any customers in the Village.  See *Detroit United R*, 172 Mich at 158; *Consumers Power Co*, 213 Mich App at 88.  This is an important characteristic that distinguishes this case from the Delaware case UPPCO heavily relies on.  In *Delmarva Power*, 575 A2d at 1102-1103, the Delaware Supreme

---

[9] This provision applies against the states through the Fourteenth Amendment.  *City of Kentwood v Estate of Sommerdyke*, 458 Mich 642, 656; 581 NW2d 670 (1998), citing *Webb's Fabulous Pharmacies, Inc v Beckwith*, 449 US 155, 160; 101 S Ct 446; 66 L Ed 2d 358 (1980), cert den 526 US 1003; 119 S Ct140; 143 L Ed 2d 208 (1999).  Additionally, Michigan's Constitution contains a substantially similar provision.  *Sommerdyke*, 458 Mich at 657, citing Const 1963, art 10, § 2.

Court ruled that a utility company was entitled to be compensated for the taking of its customers by the municipal utility. However, that utility company was "the holder of a non-exclusive franchise." *Id*. at 1103. In this case, when the "property" was purportedly taken, the franchise had expired, and UPPCO no longer was a holder of a nonexclusive franchise. Accordingly, it is abundantly clear that UPPCO had no vested property right in continuing to service its customers.[10] As noted before, UPPCO merely had a hope or wish that it would be allowed to continue to service its customers, but this falls well short of a vested property right. See *Town of Castle Rock v Gonzales*, 545 US 748, 75; 125 S Ct 2796; 162 L Ed 2d 658 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause

---

[10] We note that UPPCO does make references to the cost of its investment into infrastructure, and to the specter of utilities potentially being disincentivized to make such investments. We think the latter is a public policy argument better directed to the Legislature. The former might conceivably support a takings claim if, say, a municipality made use of infrastructure installed by a utility company, or possibly even if the municipality's acts rendered such infrastructure worthless or a costly liability to remove. However, UPPCO does not make that argument, and in any event, UPPCO neither included a takings claim in its amended complaint or apparently sought leave to file a further amended complaint adding such a claim.